**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Irwin A. SCHIFF; Cynthia Neun; Lawrence N. Cohen, aka Larry D.C. No. Cohen, individually, and all doing business as Freedom Books, www.livetaxfree.com, www.paynoincometax.com and www.ischiff.com, Defendants–Appellants.**

No. 03–16319.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 10, 2004.

Filed Aug. 9, 2004.

---

Michael D. Stein, Las Vegas, NV, for the appellants.

Judith A. Hagley, U.S. Department of Justice, Washington, D.C., for the appellee.

Allen Lichtenstein, ACLU of Nevada, for the amici.

Before: HUG, ALARCÓN, and W. FLETCHER, Circuit Judges.

HUG, Circuit Judge:

Appellants Irwin Schiff, Lawrence Cohen, and Cynthia Nuen contest the constitutionality of a preliminary injunction entered by the District of Nevada enjoining them from promoting their "zero-income" tax theories. Specifically they argue (1) that the injunction is overbroad as it relates to a book they sell, *The Federal Mafia*, (2) that the requirement that they give the government their customer list violates both their own and their customers' First Amendment and Fourteenth Amendment associational rights, and (3) that the order that they place a copy of the injunction on their websites constitutes illegal compelled speech in violation of the First Amendment. We have jurisdiction pursuant to 28 U.S.C. § 1292(a). Because we agree that the government has shown a likelihood of success on the merits and that the provisions of the injunction do not violate the appellant's rights, we affirm.

## I. Background

Irwin Schiff has a long history of opposition to the federal income tax laws.[1] For over thirty years he has maintained that the federal income tax is voluntary, although he has never been successful with that theory in court. With co-defendant Cynthia Nuen, he now operates Freedom Books in Las Vegas, Nevada. Co-defendant Lawrence Cohen is an employee at Freedom Books. Both through the bookstore and through three internet websites,[2] the defendants sell various tax packages that purport to teach the buyer how to "legally" stop paying federal income taxes. The book at issue in this injunction, *The*

1. *See, e.g., Schiff v. United States,* 919 F.2d 830, 834 (2d Cir.1990); *United States v. Schiff,* 801 F.2d 108 (2d Cir.1986); *Newman v. Schiff,* 778 F.2d 460 (8th Cir.1985); *Schiff v. Commissioner,* 751 F.2d 116 (2d Cir.1984); *United States v. Schiff,* 647 F.2d 163 (2d Cir. 1981).

2. *See* www.livetaxfree.com, www.paynoincometax.com, and www.ischiff.com.

*Federal Mafia: How the Government Illegally Imposes and Unlawfully Collects Income Taxes,* is sold individually and as part of tax-avoidance packages.

The United States brought this civil action against the defendants in March 2003 pursuant to 26 U.S.C. § 7408, which authorizes a district court to enjoin any person from conducting activities that are subject to penalty under 26 U.S.C. §§ 6700 and 6701. These sections penalize individuals who organize, market, or promote tax evasion schemes. The district court granted a temporary restraining order, prohibiting the defendants from continuing with their business, and then, after a hearing, issued a preliminary injunction against the defendants on June 16, 2003. The defendants timely appealed the order. On September 3, 2003, a motions panel from this court stayed the order pending the outcome of this appeal.

The preliminary injunction provides in relevant part that the defendants may not engage in any of the following activities:

(1) Organizing, promoting, marketing or selling, or assisting in organizing, promoting, marketing or selling, any plan or arrangement which advises or encourages taxpayers to attempt to violate internal revenue laws or unlawfully evade the assessment or collection of their federal tax liabilities, including those that promote, sell, or advocate the use of the "zero income" tax return, and the use of false with-holding forms;

(2) Engaging in conduct subject to penalty under 26 U.S.C. § 6700, including organizing or selling a plan or arrangement and making or furnishing a statement regarding the excludability of income that they know or have reason to know is false or fraudulent as to any material matter; Engaging in conduct subject to penalty under 26 U.S.C. § 6700, including organizing or selling a

plan or arrangement and making or furnishing a statement regarding the excludability of income that they know or have reason to know is false or fraudulent as to any material matter;

(4) Advertising, marketing or promoting any false, misleading, or deceptive tax position in any media for the purpose of advising or encouraging taxpayers to unlawfully evade the assessment or payment of federal income taxes, including the positions that (1) persons can legally stop paying taxes or become tax free by using the plan or arrangement; (2) federal income tax is voluntary; (3) there is no law requiring anyone to pay income tax; (4) there is no income tax, only a profits tax; (5) it is legal to report zero income regardless of what you may have earned, or to use false withholding forms; (6) Schiff's personal services as witness or brief writer will be materially helpful in defending criminal prosecution; or any other false, misleading, or deceptive tax position;

(5) Assisting others to violate the tax laws, including the evasion of assessment or payment of taxes;

(6) Inciting others to violate the tax laws, including evasion of assessment and payment of taxes;

(7) Instructing or assisting others to hinder or disrupt the enforcement of internal revenue laws by filing frivolous lawsuits, taking frivolous positions in an effort to impede IRS audits and Collection Due Process Hearings, or engaging in other conduct intended to interfere with the administration and enforcement of the internal revenue laws;

(8) Preparing or assisting in the preparation of any federal income tax return for any other person;

(9) Engaging in conduct subject to penalty under 26 U.S.C. § 6694 (preparing

any part of a return or claim for refund that includes an unrealistic position);

(10) Engaging in any conduct subject to penalty under 26 U.S.C. § 6695 (failing to sign and furnish the correct identifying number on tax returns they prepare); or

(11) Engaging in any other activity subject to injunction or penalty under 26 U.S.C. §§ 7407, 6694, or 6695, including fraudulent or deceptive conduct that substantially interferes with the proper administration of the internal revenue laws.

The preliminary injunction also requires the defendants to submit to the government a list of their customers from January 1, 1999, through the present, including names, addresses, phone numbers, email addresses, and social security or employee identification numbers. Finally, the defendants are required to post a copy of the preliminary injunction order on the "Home" pages of the websites through which they conducted their business.

On appeal the defendants argue that the preliminary injunction violates their First Amendment rights because (1) it is overbroad as it relates to *The Federal Mafia*, (2) the forced disclosure of the customer list violates their own and their customers' associational rights, and (3) the placement of the order on their websites constitutes unconstitutional compelled speech.

## II. Discussion

### A. Standard of Review

■ This court reviews a district court's grant of a preliminary injunction for abuse of discretion. *United States v. Estate Preservation Servs.*, 202 F.3d 1093, 1097 (9th Cir.2000). The scope of a preliminary injunction is also reviewed for abuse of discretion. *See Idaho Watersheds Project v. Hahn*, 307 F.3d 815, 823 (9th Cir.2002).

A trial court abuses its discretion if it bases its decision on "an erroneous legal standard or on clearly erroneous factual findings." *Estate Preservation Services*, 202 F.3d at 1097.

### B. Granting the Preliminary Injunction

■ A preliminary injunction may be granted when the plaintiffs demonstrate "either: (1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in [their] favor." *Southwest Voter Registration Education Project v. Shelley*, 344 F.3d 914, 917–18 (9th Cir.2003) (en banc) (quoting *Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir.2003)).

■ Courts use a specialized standard when reviewing preliminary injunctions issued pursuant to 26 U.S.C. § 7408. *See Estate Preservation Servs.*, 202 F.3d at 1105; *United States v. Kaun*, 827 F.2d 1144, 1148 (7th Cir.1987); *United States v. Buttorff*, 761 F.2d 1056, 1062 (5th Cir. 1985); *SEC v. Holschuh*, 694 F.2d 130, 144 (7th Cir.1982). The district court must evaluate the likelihood of future § 6700 violations, and thereby determine whether an injunction is needed. *Estate Preservation Servs.*, 202 F.3d at 1105. Factors that the court may consider when making this determination include the following: "(1) the gravity of the harm caused by the offense; (2) the extent of the defendant's participation, (3) the defendant's degree of scienter; (4) the isolated or recurrent nature of the infraction; (5) the defendant's recognition (or non-recognition) of his own culpability; and (6) the likelihood that the defendant's occupation would place him in a position where future violations could be anticipated." *Id.*

■ Given Schiff's extensive history of tax avoidance and the fact that the defendants operate a bookstore devoted to introducing others to his tax avoidance schemes, there is a strong likelihood that the defendants would violate § 6700 in the future. Therefore, the district court did not abuse its discretion when it granted the preliminary injunction.

### C. The Scope of the Preliminary Injunction

The defendants argue that the injunction, even if appropriately granted, should be struck down because it violates their constitutional rights. They argue that the scope of the preliminary injunction is unconstitutionally broad as it relates to *The Federal Mafia*. They also argue that the injunction unconstitutionally compels them to speak and infringes on their rights to expressive association.

#### 1. *The Federal Mafia*

■ The law on prior restraints is well-developed. There are three theories by which the sale and publication of *The Federal Mafia* can be enjoined. First, pure commercial speech can be enjoined to the extent that it is fraudulent. *Central Hudson Gas & Electric v. Public Serv. Comm'n*, 447 U.S. 557, 563–64, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). Second, speech that will incite imminent lawlessness may be barred. *Brandenburg v. Ohio*, 395 U.S. 444, 447, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969). Finally, speech that aids or abets criminal activity can be prohibited. *Illinois ex rel. Madigan v. Telemarketing Assocs.*, 538 U.S. 600, 612–13, 123 S.Ct. 1829, 155 L.Ed.2d 793 (2003).

#### a. Commercial Speech

Commercial speech traditionally has been granted less protection than political speech and expressive speech. *Central*

*Hudson*, 447 U.S. at 562–63, 100 S.Ct. 2343. That much of First Amendment law is relatively settled. What is less clear is what type of speech qualifies as commercial speech. The definition of commercial speech, however, is critical to this case. If the disputed portions of *The Federal Mafia* are considered commercial speech, then the *Central Hudson* analysis would apply. Under the first prong of *Central Hudson*, if commercial speech is misleading or related to unlawful activity, the government may regulate it or ban it entirely. *Id.* at 563–64, 100 S.Ct. 2343. Schiff would lose on this prong of the *Central Hudson* test because his extensive history of litigation with the IRS leaves little doubt, not only that his theories are wrong, but that he knows they are wrong. Because the government has the right to regulate false, misleading or deceptive commercial speech, *Thompson v. Western States Medical Center*, 535 U.S. 357, 367, 122 S.Ct. 1497, 152 L.Ed.2d 563 (2002), the injunction on these materials would be appropriate. On the other hand, if the disputed portions of the book are considered political speech they would be entitled to a much higher standard of protection.

A discussion of the two definitions of commercial speech offered by the parties will be helpful here. Schiff maintains that commercial speech is limited to "advertising pure and simple." Appellant's Brief at 16–19; *see also Central Hudson*, 447 U.S. at 562, 100 S.Ct. 2343. Under this narrow definition, only the back cover, pages 303–04, and the inserts, which all advertise other products available from Schiff, would qualify as commercial speech that can be regulated by the government. The government agrees that commercial speech includes "advertising pure and simple" but argues that the Supreme Court has defined it more broadly as "expression related solely to the economic interests of the

speaker and its audience." *Central Hudson*, 447 U.S. at 561, 100 S.Ct. 2343. Although neither the government nor the district court, which adopted the government's definition of commercial speech, specifically states which pages would meet this broad definition of commercial speech, it can be assumed the government believes that, at least, Chapter Eight ("How to Stop Paying Income Taxes") and the Epilogue and Addendum to the Second Edition (which give instructions on how to file the "zero-income" returns and samples of such returns) would qualify as commercial speech under this definition.

■ To resolve the difference of opinion between Schiff and the government, it is necessary to interpret what the Supreme Court meant in *Central Hudson* when it offered both of these phrases as definitions of commercial speech. Much thought has gone into the question of what the Supreme Court really meant by the "second" category of commercial speech, upon which the government relies.[3] In this court's most recent commercial speech cases we have been forced to examine speech that blurs the line between commercial and expressive. *See Mattel, Inc. v. MCA Records, Inc.* 296 F.3d 894 (9th Cir. *2002*); *Hoffman v. Capital Cities/ABC, Inc.*, 255 F.3d 1180 (9th Cir.2001). The case before us is not so close. In both *Mattel* and *Hoffman* the speaker used pre-existing images and ideas to create a new expressive work that had commercial aspects.[4] In the ensuing intellectual property challenges, we held that the new works were primarily expressive, and, to the extent they included commercial aspects, the commercial speech was "inextricably entwined" with the expressive speech and could not be enjoined. *Hoffman*, 255 F.3d at 1185.

The case at hand is markedly different. Instead of using an iconic figure of Americana to lampoon American culture, Schiff has created an entire line of tax avoidance products and services, of which *The Federal Mafia* is the linchpin. *Compare Mattel*, 296 F.3d 894. The extravagant claims made in *The Federal Mafia* are designed to convince readers that they can lawfully avoid paying their income taxes so that the readers will buy other products in Schiff's line. The insert "From the Desk of Irwin Schiff" makes it plain that this book is the "legal" foundation upon which taxpayers can rely in following the various suggestions that he makes both in the book and elsewhere in his tapes and seminars. For example, at the bottom of that page in the last paragraph he states: "Prior editions contain no information that suggested that persons filing 'zero' income tax returns should get a refund of all the 'income' taxes they paid that year. The return shown on page 274 has been changed to reflect this information." On the inside of the fly leaf of the book it says,

---

**3.** *See, e.g., City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 419, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993); *Zauderer v. Supreme Court of Ohio*, 471 U.S. 626, 637, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985); *S.O.C., Inc. v. County of Clark*, 152 F.3d 1136, 1142 (9th Cir.1998); Mitchell N. Berman, *Commercial Speech and the Unconstitutional Conditions Doctrine: A Second Look at "The Greater Includes the Lesser"*, 55 VAND. L. REV. 693 (2002); Daniel Halberstam, *Commercial Speech, Professional Speech, and the Constitutional Status of Social Institutions*, 147 U.PA. L. REV. 771 (1999); John Paul Stevens, *The Freedom of Speech*, 102 YALE L.J. 1293 (1993).

**4.** In *Mattel*, a European pop group created the song "Barbie Girl" that parodied America's "plastic" culture. *Mattel*, 296 F.3d at 899. In *Hoffman* a magazine digitally altered images from famous movies, including an image of Dustin Hoffman in *Tootsie*, to showcase spring fashions. *Hoffman*, 255 F.3d at 1183.

Did you know, for example, that **income taxes have to be assessed just like property taxes?** And, if you do not file an income tax return, there is no lawful way the government can assess you. . . . Did you know that no law says you have to pay income taxes or that you can be 'liable' for such tax. . . . Are you aware that there are no criminal statutes that apply to income taxes?

(Emphasis in the original).

All of these things under discussion within the book are made to assure the taxpayer that the taxpayer can legitimately follow these suggestions and forms. The other insert in the book entitled, "Irwin Schiff's Freedom Books," also makes it plain that this is intended to help sell his other products. For example, on the back of the second page he shows the price for all of the various tapes and books and so forth, the videos that he is selling, and shows the entire "Freedom Package" at $1060. Then he shows on the next page the "Schiff's Specials" where you can get the Freedom Package for less and various other books and tapes for better prices. The government argues, and we are persuaded, that *The Federal Mafia* is an integral part of Schiff's whole program to market his various products for taxpayers to utilize his forms and techniques to avoid paying income tax.

The declaration of Barbara Cantrell in the court record attaches many documents obtained from the defendant's website, www.paynoincometax.com. The following are illustrative of the integral part *The Federal Mafia* plays in Schiff's whole financial program:

There are over a million people using Irwin Schiff's materials, research and applications, to set themselves free from the "income tax" scam.

* * *

We all get started with the book, "The Federal Mafia".

It's good for you to also get a Seminar, either live, cassette, or on video. This is your "class".

The Seminars come with updated documents and exhibits that are not found in the book, so they can help to update your "Federal Mafia", and they are great study tools.

If you like to read, join the many people who do this with just "The Federal Mafia". It shows you how to file the zero return, stop your wage withholding, and explains the basics.

After you file the zero return, you'll want to get the Schiff Reports, Series 5 and Series 6. These hold all of the latest research and applications, and they include a response letter for every letter the IRS sends out.

Also the Schiff Report Series tapes cover State income tax returns and amended returns if you are considering going back 3 years on claims for refunds. You'll enjoy this very much!

A good "starter kit" is "The Truck Driver's Special". It includes the "Federal Mafia", the "5½ Hour Cassette Seminar", and the "Tax Rebel's Guide to the Constitution", and sells for $80.

Or, you may want the "Secrets Combo", which includes the "Video Seminar" with the "Federal Mafia", for $175.

Transcript Record at 0062.

The Federal Mafia, Irwin Schiff's latest book explains the procedures used by thousands to legally stop paying income taxes.

It provides the information and documents required to immediately stop your wage withholding, and to file a request for a *refund* of all the taxes you paid.

$38.

Transcript Record at 0018.

His current book "The Federal Mafia" shows you:

1. How you can immediately stop having your income taxes taken from your pay;

2. How to get back every dime you paid in income taxes this year;

3. How to stop IRS agents from seizing your property ... a power no IRS agent possesses;

4. How to break "offer and compromise" agreement you might have with the IRS, since these agreements were entered into on the basis of fraud and intimidation.

Get Irwin Schiff's books and tapes and start enjoying life, with more money to spend and with the IRS off your back and out of your life.

Transcript Record at 0043.

Unlike *Hoffman* and *Mattel,* the expressive and political portions of *The Federal Mafia* are not "inextricably entwined" with its commercial elements. Schiff can relate his long history with the IRS and explain his unorthodox tax theories without simultaneously urging his readers to buy his products. Because the protected and unprotected parts of the book are not inextricably intertwined, Schiff cannot use the protected portions of *The Federal Mafia* to piggy-back his fraudulent commercial speech into full First Amendment protection.

The district court did not address *Mattel* or *Hoffman* in its analysis. Instead, it relied on several factually similar cases to support its conclusion that *The Federal Mafia* is commercial speech and can therefore be enjoined. The primary case on which the district court relied is *Estate Preservation Services.*[5]

In that case, this court upheld an injunction imposed for violations of 26 U.S.C. § 6700, the same statute at issue in this case. The defendants had been marketing various trusts that were designed to lower their clients' tax burdens, and they admitted to making several misrepresentations to their clients about the permissibility of their tax schemes. *Estate Preservation Services,* 202 F.3d at 1097–98.

Schiff argues that *Estate Preservation Services* is of little help on the First Amendment issue because the book being enjoined in that case did not include political speech. The book enjoined in *Estate Preservation Services,* "Asset Preservation Trusts (APT)—Description, Use & Benefits," was an instruction manual for tax evasion. The defendants in that case did not make any claims that the manual did anything other than describe the Asset Preservation Trusts and the benefits of using them. Nonetheless we are persuaded that *Estate Preservation Services* is applicable here because *The Federal Mafia* is acting as an advertisement for Schiff's full range of tax-avoidance products and services. As such, to the extent that *The Federal Mafia* constitutes advertising, the district court did not abuse its

**5.** *Estate Preservation Services* relies on and is part of a long series of cases upholding injunctions of fraudulent tax schemes. *See, e.g., United States v. Raymond,* 228 F.3d 804 (7th Cir.2000) (enjoining defendants from promoting their "de-taxing" system); *United States v. Kaun,* 827 F.2d 1144 (7th Cir.1987) (enjoining the leader of a tax protester group from promoting his tax shelters and helping his follow- ers fill out returns he knew to be false); *United States v. Buttorff,* 761 F.2d 1056 (5th Cir. 1985) (enjoining defendants from advocating the benefits of "pure equity trusts"); *United States v. White,* 769 F.2d 511 (8th Cir.1985) (enjoining defendants, Minnesota Society for Educated Citizens, from selling information on how to evade income taxes).

discretion when it granted the preliminary injunction enjoining publication of *The Federal Mafia* in its present form.

Fraudulent commercial speech may be enjoined. *Madigan,* 538 U.S. 600, 123 S.Ct. 1829, 155 L.Ed.2d 793. An advertisement is fraudulent when it misleads customers about the benefit of the offered product. In *Madigan,* the defendants, a for-profit fundraising company, fraudulently told their customers that "a significant amount" of each dollar donated would be put toward Vietnam veterans benefits when in fact only fifteen cents on the dollar would be put toward the charity. *Id.* at 606–09. In this case, Schiff is making similarly fraudulent claims. For example, on the inside cover of *The Federal Mafia,* he informs readers that "no law requires you to file income tax returns or pay this tax." On the same page he further claims that "there are no criminal statutes that apply to income taxes ... [a]nd there is no law giving federal courts authorization ... to prosecute anyone for income tax 'crimes'." Although these claims are far-fetched, they could mislead a customer into believing that he or she could use Schiff's products to legally stop paying income taxes. Given the risk of consumer confusion, the district court did not abuse its discretion when it enjoined *The Federal Mafia.* The government has established that it has a high probability of success on the merits, and we are persuaded that the balance of the hardships tips in favor of the members of the public who could be misled by *The Federal Mafia* and the defendants' associated products.

Because we can uphold the injunction as an appropriate restriction on fraudulent commercial speech, we do not need to address the alternate bases cited by the district court to support the injunction, inciting imminent lawless behavior and aiding and abetting criminal activity.

### 2. *Disclosure of Customer Lists*

The appellants argue that the provision requiring them to disclose their customer lists to the government is a violation of both their own and their customers' First Amendment and Fourteenth Amendment associational rights. This issue was not raised in the district court. The constitutionality of the order to disclose the customer list is solely a legal question. As such, the decision of whether to consider the issue is a discretionary one. *See United States v. Echavarria–Escobar,* 270 F.3d 1265, 1267–68 (9th Cir.2001). Because this issue was not raised in or addressed by the district court we decline to exercise our discretion to consider it at this stage. The proceedings for a permanent injunction are pending in the district court. The defendants will have an opportunity to request a stay of this portion of the injunction to allow the district court to consider this issue.

### 3. *Posting Injunction on the Websites*

■ The appellants argue that the district court's order that a copy of the preliminary injunction be placed on their websites violates their First Amendment rights by forcing them to promote an ideological position with which they do not agree. *See Hurley v. Irish–American Gay, Lesbian and Bisexual Group of Boston,* 515 U.S. 557, 580, 115 S.Ct. 2338, 132 L.Ed.2d 487 (1995). Based on their position in this litigation, there can be no doubt that the defendants do not agree with the position espoused in the preliminary injunction, but there is a difference between the case at hand and *Hurley,* or even more commercial cases such as *Turner Broadcasting System, Inc. v. FCC,* 512 U.S. 622, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994) (holding that cable operators are engaging in protected First Amendment

expression when they decide which sta-
tions to carry).

The defendants have been selling prod-
ucts that help their customers to engage in
illegal activity. Posting the preliminary
injunction on the website would bring the
fact that these tax schemes are illegal to
their potential customers' attention. This
court has held that mandated disclosure of
factual, commercial information does not
offend the First Amendment. *Envtl. Def.
Ctr., Inc. v. United States EPA,* 344 F.3d
832, 849–51 (2003). Moreover, as the gov-
ernment notes, courts routinely require
similar disclosures in regulated fields.[6]

In a commercial setting, such as a web-
site that sells products, the government
must be able to regulate content to pre-
vent the deception of customers. *Zauder-
er v. Office of Disciplinary Counsel of the
Supreme Court of Ohio,* 471 U.S. 626, 650–
51, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985).
Because the defendants are selling a prod-
uct that, if used, could expose their cus-
tomers to criminal liability for tax evasion,
the government does not offend the First
Amendment when it requires the defen-
dants to post the preliminary injunction on
the websites where the product is sold,
warning potential customers of the hazards
of the product.

### III. Conclusion

We conclude that neither the district
court's decision to grant the preliminary
injunction nor the scope of the preliminary
injunction abuses the district court's dis-
cretion. We therefore AFFIRM.

6.   *See, e.g., Lorain Journal Co. v. United States,*
342 U.S. 143, 155, 72 S.Ct. 181, 96 L.Ed. 162
(1951); *FTC v. Figgie Int'l, Inc.,* 994 F.2d 595,
607 (9th Cir.1993); *Highmark, Inc. v. UPMC
Health Plan, Inc.,* 276 F.3d 160, 165 (3d Cir.
2001); *Am. Airlines, Inc. v. Allied Pilots Ass'n,*
228 F.3d 574, 578 (5th Cir.2000).