

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-12-2005

# USA v. Bell

Precedential or Non-Precedential: Precedential

Docket No. 04-1640

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Bell" (2005). *2005 Decisions.* Paper 772.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/772

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 04-1640

———————

UNITED STATES OF AMERICA

v.

THURSTON PAUL BELL,

Appellant

———————

On Appeal from the United States District Court
for the Middle District of Pennsylvania
D.C. Civil Action No. 01-cv-02159
(Honorable Christopher C. Conner)

———————

Argued January 25, 2005

Before: SCIRICA, *Chief Judge*,
RENDELL and FISHER, *Circuit Judges*

(Filed: July 12, 2005)

ANTHONY N. THOMAS, ESQUIRE (ARGUED)
JEFFREY J. WOOD, ESQUIRE
Thomas & Associates
3111 North Front Street
Harrisburg, Pennsylvania 17110
     Attorneys for Appellant

PAULA K. SPECK, ESQUIRE (ARGUED)
JONATHAN S. COHEN, ESQUIRE
JOHN SCHUMANN, ESQUIRE
RICHARD T. MORRISON, ESQUIRE
United States Department of Justice
Tax Division
P.O. Box 502
Washington, D.C. 20044
     Attorneys for Appellee

---

## OPINION OF THE COURT

---

SCIRICA, *Chief Judge*.

At issue is whether a permanent injunction barring defendant Thurston Paul Bell from promoting and selling unlawful tax advice is permissible under the First Amendment. We will affirm the injunction with modifications.

2

**I.**

Thurston Paul Bell is a professional tax protester who ran a business and a website selling bogus strategies to clients endeavoring to avoid paying taxes. In the 1980s, he worked for Save-A-Patriot, an entity dedicated to the proposition that "American citizens are not liable for the income tax." Bell later started his own organization, Tax-gate, and a website, www.tax-gate.com, where he drafted letters and pleadings to the Internal Revenue Service and state tax agencies on behalf of clients. Bell charged for advice and services in preparing various tax filings. Bell subsequently founded another group, the National Institute for Taxation Education ("NITE"), and the related website www.nite.org., with the mission of providing "income tax help, solutions and strategies that work for Citizens of the United States to legally declare their gross income to be Zero."

Substantively, Bell's main rationale for avoiding the income tax is known as the "U.S. Sources argument" or the "Section 861 argument."[1] This method has been universally

---

[1]The District Court summarized Bell's U.S. Sources argument:

> The Internal Revenue Code defines "gross income" as "all income from whatever source derived." 26 U.S.C. § 61(a). Bell claims that the word "source" in section 61 is defined in the "Source Rules and Other General *Rules Relating to Foreign Income.*" 26 U.S.C. §§ 861-865

(emphasis supplied). Section 861 states that certain "items of gross income shall be treated as income from sources within the United States...." 26 U.S.C. § 861(a). According to the U.S. Sources argument, domestically earned wages of U.S. citizens are not taxable because such wages are not *specifically* mentioned in the list of items of gross income that "shall be treated as income from sources within the United States." *See* 26 U.S.C. § 861(a). Bell concedes that section 861 itself does not *exempt* domestically earned wages of U.S. citizens. No doubt Bell makes this concession because section 861 plainly provides that "[c]ompensation for labor or personal services performed in the United States ..." shall be treated as income from sources within the United States. 26 U.S.C. § 861(a)(3). Nevertheless, he argues that such wages are not taxable because certain regulations promulgated under section 861 (*i.e.* 26 C.F.R. §§ 1.861-8(a)(4), 1.861-8(f)(1), and 1.861-8T(d)(2)(ii)(A)) create an applicable exemption. Bell's clients typically file zero income tax returns with an "asseveration of claimed income" attached, disputing the gross income indicated on the taxpayer's W-2 forms. When this method fails, Bell argues that the IRS

4

discredited. *See, e.g., Great-West Life Assurance Co. v. United States*, 678 F.2d 180, 183 (Ct. Cl. 1982); *Loofbourrow v. Comm'r*, 208 F. Supp. 2d 698, 709-10 (S.D. Tex. 2002); *Williams v. Comm'r*, 114 T.C. 136, 138-39 (2000). Still, several of Bell's clients obtained unwarranted tax refunds by filing returns according to his methods. From May 2000 until February 2002, over 400 clients paid Bell approximately $60,000 through the internet payment system PayPal.

The United States requested a preliminary injunction against Bell under 26 U.S.C. §§ 7402 and 7408.[2] Granting the

---

has violated his clients' due process rights by not allowing them to cross-examine their employers regarding the gross income listed on their W-2 forms. Bell's goal in seeking to cross-examine employers is to show an absence of gross income according to the fallacious U.S. Sources argument outlined above.

*United States v. Bell*, 238 F. Supp. 2d 696, 699 (M.D. Pa. 2003).

[2]Section 7402 provides that "[t]he district courts of the United States at the instance of the United States shall have such jurisdiction to make and issue in civil actions, writs and orders of injunction, . . . and to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws." 26 U.S.C. § 7402(a).

Section 7408 provides that "if the court finds – (1) that

5

motion, the District Court enjoined Bell from "directly or indirectly, by means of false, deceptive, or misleading commercial speech . . . organizing, promoting, marketing or selling . . . the tax shelter, plan or arrangement known as the 'U.S. Sources argument' . . . or any other abusive tax shelter, plan or arrangement that incites taxpayers to attempt to violate the internal revenue laws," and from assisting others in such violations. *Bell*, 238 F. Supp. 2d at 705-07. The District Court also ordered Bell to communicate by mail with all persons he assisted with the preparation of tax filings, to whom he gave or sold tax materials related to the U.S. Sources argument, or who contacted him about such matters. The letter was to inform those persons of the court's injunction, the fraudulent nature of the U.S. Sources argument, their potential liability for filing frivolous tax returns, and the possibility that the government may seek to recover erroneous refunds and impose other penalties. *Id.* The District Court ordered Bell to maintain his

---

the person has engaged in any specified conduct, and (2) that injunctive relief is appropriate to prevent recurrence of such conduct, the court may enjoin such person from engaging in such conduct or in any other activity subject to penalty under this title." 26 U.S.C. § 7408(b). "Specified conduct" is defined as "any action, or failure to take action, which is – (1) subject to penalty under section 6700 [relating to penalty for promoting abusive tax shelters, etc.], or section 6701 [relating to penalties for aiding and abetting understatement of tax liability]." 26 U.S.C. § 7408(c).

6

principal website, www.nite.org, during the pendency of the preliminary injunction, to remove "false commercial speech, and materials designed to incite others to violate the law (including tax laws)," and to post the court's order on the website while removing all the materials about the U.S. Sources argument. *Id.* The order also required Bell to inform the government of the identities of all persons whom he had helped file tax returns.[3]

[3]The relevant text of the order is reproduced below:

AND NOW, this 10th day of January, 2003, in accordance with the accompanying memorandum, it is hereby ORDERED that plaintiff's motion for preliminary injunction (Doc. 34) is GRANTED. It is further ORDERED that:

1. Thurston Bell and his representatives, agents, servants, employees, attorneys, and those persons in active concert or participation with him, are preliminarily enjoined from directly or indirectly, by means of false, deceptive, or misleading commercial speech:

a. Organizing, promoting, marketing, or selling (or assisting therein) the tax shelter, plan, or arrangement known as "the U.S. Sources argument" (also known as "the section 861 argument") or any other abusive tax shelter, plan or arrangement that incites taxpayers to attempt to violate the internal revenue laws or unlawfully evade the assessment or collection of their federal tax liabilities or unlawfully claim improper tax refunds;

b. Further engaging in any conduct subject to penalty under 26 U.S.C. § 6700, *i.e.* making or furnishing, in connection with the organization or sale of an abusive shelter, plan, or

7

arrangement, a statement they know or have reason to know is false or fraudulent as to any material part;

c. Further engaging in any conduct subject to penalty under 26 U.S.C. § 6701, *i.e.* assisting others in the preparation of any tax forms or other documents to be used in connection with any material matter arising under the internal revenue laws and which they know will (if so used) result in the understatement of income tax liability; and

d. Further engaging in any conduct that interferes with the administration and enforcement of the internal revenue laws.

2. Bell shall forthwith send a letter to:

a. All persons to whom he gave, sold, or distributed any materials espousing or related to the U.S. Sources argument;

b. All persons for whom Bell prepared or assisted in the preparation or drafting of any federal returns or tax-related documents; and

c. All persons who contacted Bell regarding the U.S. Sources argument (in paper, via telephone, or through electronic means); and inform those persons of the entry of the court's findings concerning the falsity of Bell's representations, the falsity of the tax returns based in whole or in part on the U.S. Sources argument, the possibility of the imposition of frivolous-return penalties against them, the possibility that the United States may seek to recover any erroneous refund they may have received, and the fact that a preliminary injunction has been entered against Bell (and attach a copy of this Order to the

8

*Id.* The preliminary injunction was converted to a permanent injunction on January 29, 2004.

## II.

We have jurisdiction under 28 U.S.C. § 1291 to review the District Court's grant of a permanent injunction. We review the decision to grant or deny an injunction for abuse of discretion. *Chao v. Rothermel*, 327 F.3d 223, 225 (3d Cir. 2003). We review findings of fact for clear error, and conclusions of law *de novo. Highmark, Inc. v. UPMC Health*

---

letter); and Bell shall simultaneously serve copies of *all* such letters (without attachment) to counsel for the United States at the address listed on the docket of this matter; and

3. Bell shall maintain the NITE website (www.nite.org) during the pendency of this preliminary injunction Order, remove from the aforementioned website all abusive-tax-shelter-promotional materials, false commercial speech, and materials designed to incite others to violate the law (including tax laws), and display prominently on the first page of the website an attachment of this preliminary injunction Memorandum and Order.

4. Bell shall mail to counsel for the United States, at the address listed on the docket of this matter, one copy of every federal tax return, amended return, or other document intended for the IRS that he prepares, or assists in the preparation of, on behalf of any other person or entity during the pendency of this preliminary injunction Order . The mailing shall be made on the same date the document is mailed to or filed with the IRS.

9

*Plan, Inc.*, 276 F.3d 160, 170 (3d Cir. 2001).

## III.

Bell contends the District Court erred in concluding the materials on www.nite.org were false commercial speech unprotected by the First Amendment. He also argues the injunction is overbroad because it prospectively bars him from advocating resistance to the tax laws – speech he claims is protected because it does not incite imminent lawless action. He also contends the requirements to post the injunctive order on his website and turn over his list of clients to the government are unconstitutional forced speech. Because Bell makes no argument with respect to either the legality of the U.S. Sources argument or the District Court's application of the standard for injunctive relief under 26 U.S.C. § 7402(a) or Fed. R. Civ. P. 65, we limit our discussion to the First Amendment issues.[4]

---

[4]The standard for evaluating a motion for preliminary injunction is a four-part inquiry as to: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest. *ACLU of N.J. v. Black Horse Pike Reg'l Bd. of Educ.*, 84 F.3d 1471, 1477 n.2 (3d Cir. 1996) (en banc).

10

Permanent injunctions like the one here are "classic examples of prior restraints" on speech, *Alexander v. United States*, 509 U.S. 544, 550 (1993), and prior restraints are generally presumed unconstitutional.[5] *New York Times Co. v. United States*, 403 U.S. 713 (1971) (per curiam). Prior restraints, however, are not unconstitutional *per se*, and may be permissible depending on the type of speech at issue. *Southeastern Promotions*, 420 U.S. at 558; *see also Near v. State of Minnesota ex rel. Olson*, 283 U.S. 697, 716 (1931). First Amendment protection does not necessarily attach "merely because the conduct was in part initiated, evidenced, or carried

---

[5]The Supreme Court has explained:

> The presumption against prior restraints is heavier–and the degree of protection broader–than that against limits on expression imposed by criminal penalties. Behind the distinction is a theory deeply etched in our law: a free society prefers to punish the few who abuse rights of speech after they break the law than to throttle them and all others beforehand. It is always difficult to know in advance what an individual will say, and the line between legitimate and illegitimate speech is often so finely drawn that the risks of freewheeling censorship are formidable.

*Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558-59 (1975) (citing *Speiser v. Randall,* 357 U.S. 513 (1958)).

11

out by means of language, either spoken, written or printed." *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949) (Black, J.); *see also Ohralik v. Ohio St. Bar Ass'n*, 436 U.S. 447, 456 (1978) (noting that regulation of information regarding securities, corporate proxy statements, price information, and statements by employers to employees is constitutionally permissible in various contexts).

**A.**

The District Court found Bell's bogus tax advice enjoys no First Amendment protection and may be restrained because it is false commercial speech. *Bell*, 238 F. Supp. 2d at 703-04. We have defined commercial speech as "expression related to the economic interests of the speaker and its audience, generally in the form of a commercial advertisement for the sale of goods and services." *U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.,* 898 F.2d 914, 933 (3d. Cir.1990). To determine whether speech is commercial, courts should consider whether: (1) the speech is an advertisement; (2) the speech refers to a specific product or service; and (3) the speaker has an economic motivation for the speech. *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66-67 (1983); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 193 F.3d 781, 793-794 (3d Cir. 1999). An affirmative answer to each question indicates "strong support" for the conclusion that the speech is commercial. *Id.*

In concluding the materials on Bell's website were predominantly commercial speech, the District Court made a

12

factual finding that his website was the internet version of "a television infomercial" made to entice visitors to join Bell's organization and pay him for tax advice. *Bell*, 238 F. Supp. 2d at 703. This finding is uncontradicted. From May 2000 to February 2002, Bell received approximately $60,000 in internet payments from more than 400 clients. The www.nite.org website invited visitors to pay a $195 annual fee for membership, which would give them access to tapes and documents to instruct them how to use the U.S. Sources rationale to file zero federal income tax returns. The website included an itemized schedule of fees charged by Bell for personalized assistance in completing IRS forms. Bell also recruited apprentices, known as "Senior Fellows," who, for a $3,500 fee, could receive training on how to market the U.S. Sources strategy to their own clients. As the District Court noted, the website was imbued with the unmistakable rhetoric of advertising. *Id.* (citing record). For example, Bell claimed on www.nite.org that "[u]nlike others who peddle arguments that may sound similar on the surface, our strategies have proven success, as the Internal Revenue Service (IRS) itself (as well as U.S. Attorneys and Federal Judges) has accepted NITE's arguments as valid." The website also referred to specific products and services, including forms, letters and assistance in preparing them. As noted, Bell profited from this scheme, and his profit motive was the driving force behind the enterprise.

In disputing the false commercial speech ruling, Bell argues the website also contained "important information

13

concerning history, economic systems, monetary systems, judicial systems, politics and opinions." But even if true, this fact does not undermine the well-supported finding that the website's primary function was to sell fraudulent and illegal tax advice and services. Bell contends that because his website includes this additional information, it is not "pure" commercial speech which merely proposes a commercial transaction. *See Bolger*, 463 U.S. at 66. Rather, Bell claims his commercial speech is "inextricably intertwined" with protected political expression. *See Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 796 (1988) ("Where . . . the component parts of a single speech are inextricably intertwined, we cannot parcel out the speech, applying one test to one phrase and another test to another phrase. Such an endeavor would be both artificial and impractical. Therefore, we apply our test for fully protected expression.").

On these facts, Bell's argument is meritless. Packaging a commercial message with token political commentary does not insulate commercial speech from appropriate restrictions.[6] *Riley*

---

[6]We are mindful generally of the "difficulty of drawing bright lines that will clearly cabin commercial speech in a distinct category." *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 419 (1993). We have also noted that "often, speech consists of complex mixtures of commercial and noncommercial elements." *In re Orthopedic Bone Screw*, 193 F.3d at 793 (quoting *Bolger*, 463 U.S. at 81 (Stevens, J.

14

is distinguishable because it involved legally-required commercial and political speech (a state law requiring disclosure of charitable contributions). *See Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 474 (1989) (distinguishing *Riley* on that ground). In *Fox*, the Court held a policy banning tupperware parties at a state university did not hinder petitioner's ability to convey a noncommercial message (encouragement of home economics) independently of its commercial message (selling tupperware). Likewise, an appropriately drafted injunction in this case would curtail Bell's promotion of tax evasion but would not prevent him from advocating against the tax laws generally.

Restrictions on commercial speech are subject to intermediate scrutiny. *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm. of N.Y.*, 447 U.S. 557, 566 (1980). The Supreme Court has explained the standard:

> In commercial speech cases, a four-part analysis has developed. At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is

concurring)). No such complex mixture exists here. Customers paid Bell for his advice and services in preparing fraudulent tax returns, not for his colorful views on the tax code.

15

substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

*Id.* The threshold inquiry is whether the commercial speech involves unlawful activity or is misleading. If so, the government may restrict it and the inquiry ends. *See In re R.M.J.*, 455 U.S. 191, 203 (1982) ("Misleading advertising may be prohibited entirely."); *Bates v. State Bar of Ariz.*, 433 U.S. 350, 384 (1977) ("Advertising concerning transactions that are themselves illegal obviously may be suppressed").

Here, the District Court found that Bell's speech was both misleading and that it promoted unlawful activity. Like the several other courts faced with similar claims from tax protesters, the District Court found that Bell's "U.S. Sources" interpretation of the tax code is "nonsensical" and frivolous, rests "purely on semantics" and "takes the regulations promulgated under Section 861 [of the Internal Revenue Code] out of context." *Bell*, 238 F. Supp. 2d at 700. The court found that Bell's website invited visitors to violate the tax code, and sold them materials instructing them how to do so. These findings are not contradicted by the record. The District Court properly concluded the false commercial speech on Bell's website was not protected by the First Amendment. *Bell*, 238 F. Supp. 2d at 703-04 (citing *Castrol, Inc. v. Pennzoil Co.*, 987 F.2d 939, 949 (3d Cir. 1993)).

16

Bell also invokes the general principle of First Amendment law that prior restraints, as opposed to criminal penalization, bear a heavier presumption against their constitutional validity. *See Southeastern Promotions*, 420 U.S. at 558-59. But this principle does not apply to restrictions on unprotected speech, including false or unlawful commercial speech. *See, e.g., Nat'l Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679, 697-99 (1978) (upholding injunction against publication of ethical canon violating antitrust laws); *Pittsburgh Press Co. v. Pittsburgh Comm. on Human Relations*, 413 U.S. 376, 389-90 (1973) (upholding injunction against publication of employment advertisements violating gender discrimination laws). Addressing similar facts, the courts of appeals have repeatedly upheld injunctions against abusive tax schemes like Bell's on false commercial speech grounds. *See, e.g., United States v. Schiff*, 379 F.3d 621, 629 (9th Cir. 2004); *United States v. Estate Pres. Servs.*, 202 F.3d 1093, 1106 (9th Cir. 2000); *United States v. Buttorff*, 761 F.2d 1056, 1066-68 (5th Cir. 1985). We will affirm the injunction insofar as it restricts Bell's false commercial speech.

**B.**

Bell argues the injunction improperly curtails his First Amendment right to engage in protected political speech. Specifically at issue are certain of the order's provisions, based on *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969) (per curiam), that forbid Bell from engaging in speech inciting others to violate the tax laws. On these facts, we believe the injunction

17

should be grounded on aiding and abetting violations of the tax laws and on false commercial speech rather than on incitement of illegal activity. Therefore, we will construe the injunction narrowly.

Although profit-seeking material promoting the sale of bogus tax advice predominated, Bell's website also featured a sampling of his views on the tax system and other topics. In his brief, Bell contends his website "embarks on a rather interesting study of the Constitution and the Internal Revenue Code . . . and discusses his own experiences with the IRS and federal judiciary and outlines his theories about federal income tax." The record indicates the website contained some political speech protesting the tax laws generally.

The District Court correctly recognized that its injunctive order must be narrowly drawn to separate protected speech from unprotected speech. *Bell,* 238 F. Supp. 2d at 704. But to the extent any materials on Bell's website were non-commercial in nature, the District Court held this content could be banned "where such advocacy is directed to inciting or producing imminent lawless action and *is likely to incite or produce such action*." *Id.* (emphasis in original) (quoting *Brandenburg*, 395 U.S. at 447). The accompanying injunctive order roughly tracked the language from *Brandenburg*, and compelled Bell to desist from promoting or selling any plan "that incites taxpayers to attempt to violate the internal revenue laws" and to remove

18

"materials designed to incite others to violate the law (including tax laws)." *Id.* at 705, 706.[7]

Because the District Court's reliance on *Brandenburg* to model the injunction is a purely legal question, our review is plenary. *Brandenburg* grew out of a line of well known Supreme Court cases addressing government restrictions on radical political advocacy. *See, e.g., Schenk v. United States*, 249 U.S. 47, 52 (1919) (Holmes, J.); *Gitlow v. New York*, 268 U.S. 652, 673 (1925) (Holmes, J., dissenting); *Whitney v. California*, 274 U.S. 357, 377 (1927) (Brandeis, J., concurring); *Dennis v. United States*, 341 U.S. 494 (1950). A unanimous Supreme Court struck down Ohio's Criminal Syndicalism Act, which aimed to punish "persons who advocate or teach the duty,

---

[7]In choosing to tailor its injunction using *Brandenburg*'s incitement language to restrict the non-commercial elements of Bell's speech, the District Court cited *United States v. Raymond*, 228 F.3d 804 (7th Cir. 2000), and *United States v. Kaun*, 827 F.2d 1144 (7th Cir. 1987). *See Bell*, 238 F. Supp. 2d at 704. Unlike *Raymond*, the injunction in *Kaun* was not modeled on *Brandenburg*'s incitement language, but rather barred the defendant from aiding and abetting violations of the tax code. *Compare Kaun*, 827 F.2d at 1146 n.1 *with Raymond*, 228 F.3d at 815 n.7 ("[T]he words . . . in the *Kaun* injunction . . . have been replaced by the words 'Inciting other individuals and entities to understate their federal tax liability, avoid the filing of federal tax returns, or avoid paying federal taxes[.]'").

necessity, or propriety of violence as a means of accomplishing industrial or political reform; or who publish or circulate or display any book or paper containing such advocacy; or who justify the commission of violent acts with intent to exemplify, spread or advocate the propriety of the doctrines of criminal syndicalism; or who voluntarily assemble with a group formed to teach or advocate the doctrines of criminal syndicalism." *Brandenburg*, 395 U.S. at 448 (internal quotation marks omitted). The indictment charged that the defendant, a leader at a Ku Klux Klan cross-burning rally, "did unlawfully by word of mouth advocate or teach the necessity, or propriety of crime, violence, or unlawful methods of terrorism as a means of accomplishing political reform." *Id.* at 449 n.3. In striking down the statute the Court concluded that "we are confronted with a statute which, by its own words and as applied, purports to punish mere advocacy . . . . Such a statute falls within the condemnation of the First and Fourteenth Amendments." *Id.* at 449. The Court pronounced the rule that only advocacy "directed to inciting or producing imminent lawless action and is likely to incite or produce such action" may be proscribed.[8]

---

[8]Courts have differed on whether *Brandenburg* protects forms of expression other than advocacy in cases alleging incitement of violence. Most courts "have generally demanded that all expression, advocacy or not, meet the *Brandenburg* test before its regulation for its tendency to incite violence is permitted." *James v. Meow Media, Inc.*, 300 F.3d 683, 698-699 (6th Cir. 2002) (rejecting wrongful death claim against maker of

a violent video game); *see also Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1199-1200 n.8 (9th Cir. 1989) (rejecting claim that pornography incites imminent lawless action against women and holding that plaintiffs failed "to establish the 'clear and present danger' required in order for any of the exceptions to general first amendment principles to apply"); *Herceg v. Hustler Magazine, Inc.*, 814 F.2d 1017, 1022 (5th Cir. 1987) (rejecting claim that article on auto-erotic asphyxiation incited imminent lawless action and raising the question of whether written materials could ever create culpable imminent incitement under *Brandenburg*).

The Court of Appeals for the Fourth Circuit has suggested *Brandenburg* protects only advocacy and not other forms of speech claimed to incite lawless action. *See Rice v. Paladin Enters., Inc.*, 128 F.3d 233, 263-65 (4th Cir. 1997) (holding publisher of an instruction manual on murder could be found liable for aiding and abetting the commission of a crime). The *Paladin* court concluded that "to understand [*Brandenburg*] as addressing itself to speech other than advocacy would be to ascribe to it an intent to revolutionize the criminal law . . . by subjecting prosecutions to the demands of *Brandenburg's* 'imminence' and 'likelihood' requirements whenever the predicate conduct takes, in whole or in part, the form of speech." *Id.* at 265. In *Paladin*, the defendant stipulated to a set of facts establishing aiding and abetting of murder as a matter of law, moving the speech outside the protective orbit of the First

*Id.* at 447.

Although it has been employed by some courts, we believe *Brandenburg* is the wrong tool for tailoring the injunction in this case.[9] The statute declared unconstitutional in

---

Amendment. *See id.* at 241. *Brandenburg* clearly does not apply to the kind of unprotected or unlawful speech or speech-acts (e.g., aiding and abetting, extortion, criminal solicitation, conspiracy, harassment, or fighting words) at issue in *Paladin* and here. Whether *Brandenburg* extends to lawful forms of expression beyond "advocacy" – defined as "the act of pleading for or actively supporting a cause or proposal[,]" *Black's Law Dictionary* 55 (7th ed. 1999) – is an issue for another case.

[9]We also note that reliance on *Brandenburg* to justify an injunction banning "materials designed to incite others to violate the law" – without reference to imminence – is erroneous. Under *Brandenburg*, only speech inciting *imminent* lawless action may be restricted. *See Hess v. Indiana*, 414 U.S. 105, 108 (1973) (per curiam) ("[C]onstitutional guarantees . . . do not permit a State to forbid or proscribe advocacy . . . of law violation except where such advocacy is directed to inciting or producing *imminent* lawless action.") (emphasis in original) (internal quotation marks omitted); *see also Herceg*, 814 F.2d at 1022 ("The crucial element to lowering the first amendment shield is the imminence of the threatened evil.") (citing *Hess*). Furthermore, whether the required imminence exists in the

22

*Brandenburg* addressed the danger of advocacy provoking violence. Its breadth of language aside, the case does not support an affirmative ban of material posted on a website advocating against the income tax.[10] Moreover, the offending portions of Bell's speech may be restricted adequately on other grounds, including false commercial speech (as discussed in Part IIIA, *supra*) and aiding-and-abetting violations of the tax laws, without raising constitutional questions or distorting

context of Bell's website is questionable.

[10]We do not mean to suggest that *Brandenburg* could never serve as the basis to tailor an injunction applicable to a website containing content directed toward inciting imminent lawless action. For example, the case might find proper application to restrain a website published by a hate group naming specific groups or individuals as targets, or specifying instructions for committing a crime. *See* Department of Justice, *Report on the Availability of Bombmaking Information, the Extent to Which Its Dissemination is Controlled by Federal Law, and the Extent to Which Such Dissemination May Be Subject to Regulation Consistent with the First Amendment to the United States Constitution*, 37 (April 1997) ("[C]ulpability is premised, not on defendant's 'advocacy' of criminal conduct, but on defendant's successful efforts to assist others by detailing to them the means of accomplishing the crimes."), *quoted in Paladin*, 128 F.3d at 246. The report was commissioned by Congress in connection with the Antiterrorism and Effective Death Penalty Act of 1996.

23

*Brandenburg*. Other courts have worded injunctions against tax protesters like Bell without reliance on *Brandenburg*. *See, e.g., Schiff*, 379 F.3d at 629 ("Because we can uphold the injunction as an appropriate restriction on fraudulent commercial speech, we do not need to address the alternate [basis] cited by the district court to support the injunction, inciting imminent lawless behavior."); *Estate Pres. Servs.*, 202 F.3d at 1106; *Buttorff*, 761 F.2d at 1066-68 (5th Cir. 1985).[11]

Promoters of tax fraud who, like Bell, provide detailed instructions and techniques to avoid paying taxes have been prosecuted on aiding and abetting grounds in several cases notwithstanding asserted First Amendment defenses. *See United States v. Freeman*, 761 F.2d 549, 552 (9th Cir. 1985) (Kennedy, J.) (holding aiding-and-abetting liability possible even if the speech "spring[s] from the anterior motive to effect political and social change"). In this case, an injunction could be just as effective and avoid raising constitutional questions if it were written to ban false commercial speech and aiding and abetting violations of the tax laws rather than

---

[11]*But see United States v. Buttorff*, 572 F.2d 619, 624 (8th Cir. 1978). In this earlier case against tax protester Gordon Buttorff, the Court of Appeals for the Eighth Circuit upheld an aiding and abetting conviction and noted that the defendant "incited individuals to lawless acts." *Id.* (citing *Brandenburg*). This decision also omitted *Brandenburg*'s imminence requirement.

24

*Brandenburg* incitement. Furthermore, wording the injunction to forbid aiding and abetting would be more consistent with the District Court's finding that Bell's materials were used to assist tax violations, not merely advocate them.

Bell's case is not the first where the breadth of an injunctive order against a tax protester has skirted constitutional limits. *See Kaun*, 827 F.2d at 1150. In *Kaun*, the Court of Appeals for the Seventh Circuit construed an injunctive order narrowly rather than remand to the district court to write a new order. We will do the same here. *See Ideal Toy Corp. v. Plawner Toy Mfg. Corp.*, 685 F.2d 78, 83 (3d Cir. 1982). We will construe paragraph 1(a) of the order to mean that Bell may only be found in contempt for violating the order where the evidence demonstrates that he advertised, marketed or sold false tax advice, or aided and abetted others, directly or indirectly, to violate tax laws. *Cf. Kaun*, 827 F.2d at 1151-52.[12] We will also

---

[12]The *Kaun* court construed an injunction against defendant Dennis Kaun, a leader of tax protest meetings, such that "Kaun may be found in contempt of the injunction under this paragraph if the evidence shows that Kaun actually persuaded others, directly or indirectly, to violate the tax laws, or if the evidence shows that Kaun's words and actions were directed toward such persuasion in a situation where the unlawful conduct was imminently likely to occur." 827 F.2d at 1151-52. Given our view that *Brandenburg* does not fit the facts of this case, we prefer to rest the injunction solely on the grounds of false

construe the language in paragraph 3 ordering Bell to remove "materials designed to incite others to violate the law (including the tax laws)" as an order to remove materials aiding and abetting violations of the tax laws.[13] The remainder of the order will be affirmed. Bell is free to criticize the tax system. Based on grounds of false commercial speech and aiding and abetting violations of the Internal Revenue Code, the order prohibits him from further violation of the tax laws without raising constitutional issues.

## C.

Bell claims the District Court's order to place the injunctive order prominently on his website is forced speech prohibited by the First Amendment. *See Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston,* 515 U.S. 557 (1995) (holding unconstitutional under the First Amendment a state law requiring private citizens who organized a parade to include a group that wished to convey an unwanted message). Bell also cites *Turner Broad. Sys., Inc. v. FCC,* 512 U.S. 622 (1994). Among other differences, however, these

---

commercial speech aiding and abetting violations of the tax laws.

[13] As noted, the order to remove "materials designed to incite others to violate the law (including the tax laws)" fails to incorporate the required concept of imminence.

cases do not involve speech principally dedicated to selling fraudulent and unlawful products and services.

In a commercial setting, the government may impose reasonable regulations on content to prevent deception of customers. *Zauderer v. Office of Disciplinary Counsel of the Supreme Ct. of Ohio,* 471 U.S. 626, 650-51 (1985). Likewise, we have held that mandatory disclosure of factual, commercial information does not offend the First Amendment. *See Highmark, Inc. v. UPMC Health Plan, Inc.,* 276 F.3d 160, 165 (3d Cir. 2001) (upholding injunction ordering health insurer to publish corrective advertisement); *see also Lorain Journal Co. v. United States,* 342 U.S. 143, 155 (1951); *Envtl. Def. Ctr., Inc. v. EPA*, 344 F.3d 832, 849-51 (9th Cir. 2003), *cert. denied*, 124 S.Ct. 2811 (2004). In a case involving a tax protester website and facts similar to this one, the Court of Appeals for the Ninth Circuit upheld the requirement that the injunction be posted on the website. *Schiff*, 379 F.3d at 630 -631 (9th Cir. 2004).

Posting the preliminary injunction on the website gives notice to readers that Bell's tax advice is bogus and unlawful. Without this information, Bell's readers could expose themselves to criminal and/or civil liability for failure to declare income and pay taxes. The First Amendment is not implicated by this disclosure. We see no abuse of discretion.

**D.**

Bell contends the order's requirement that he furnish the government with a list of customers who bought his products or

27

services violates his First Amendment rights of free association. The argument is meritless.

As noted, the record demonstrates that Bell's operation was primarily a commercial enterprise, not a political group. Producing a customer list does not offend the First Amendment because commercial transactions do not entail the same rights of association as political meetings. *See IDK, Inc. v. County of Clark*, 836 F.2d 1185, 1193-95 (9th Cir. 1988) (holding escort/client relationship not protected). Bell relies on a number of cases involving advocacy groups, including *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958) (reversing compelled disclosure of membership list) and *Gibson v. Fla. Leg. Investigative Comm.*, 372 U.S. 539, 544 (1963), but they do not fit the facts here. The one decision cited by Bell involving tax protesters, *In re First Nat'l Bank, Englewood, Co.*, 701 F.2d 115 (10th Cir. 1983), is inapposite. The groups in that case made a prima facie showing that they were primarily engaged in advocacy of tax reform, not the sale of tax evasion strategies, and so the court remanded for an evidentiary hearing regarding whether the government had a compelling need for the records. *Id.* at 118. The courts that have considered this issue have held that the government's interest in enforcement of the tax laws outweighs rights of association that may be implicated by disclosure. *See Kerr v. United States*, 801 F.2d 1162, 1164 (9th Cir. 1986); *St. German of Alaska E. Orthodox Catholic Church v. United States*, 840 F.2d 1087, 1093-94 (2d Cir. 1988). Here, the government has a compelling interest, among other things,

28

in determining whether Bell's customers filed fraudulent returns in violation of the Internal Revenue Code. *See First Nat'l Bank of Tulsa v. Dep't of Justice*, 865 F.2d 217, 220 (10th Cir. 1989).

In sum, the District Court did not abuse its discretion in ordering Bell to disclose his customer list.

## IV.

Subject to our construction of the injunctive order in part III.B, we will affirm the judgment of the District Court.