RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 05a0488p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

No. 04-6360

DANIEL J. GLEASON, individually and d/b/a Tax
Toolbox, Inc., and My Tax Man, Inc.,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 03-00311—Joe B. Brown, Magistrate Judge.

Argued: November 9, 2005

Decided and Filed: December 29, 2005

Before: MERRITT, MOORE, and SUTTON, Circuit Judges.

_____

## COUNSEL

**ARGUED:** John D. Schwalb, WILLIAMS & SCHWALB, Franklin, Tennessee, for Appellants.
Curtis C. Pett, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.
**ON BRIEF:** John D. Schwalb, Ernest W. Williams, WILLIAMS & SCHWALB, Franklin,
Tennessee, for Appellants. Curtis C. Pett, Gilbert S. Rothenberg, Charles Bricken, Richard T.
Morrison, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

_____

## OPINION

_____

MERRITT, Circuit Judge. "Every day can be a new deduction if you structure your life
right," defendant Daniel J. Gleason promised potential customers of his "Tax Toolbox." Mr.
Gleason's aggressive tax strategies attracted the attention of the Internal Revenue Service (IRS) and
prompted the District Court to enjoin him, pursuant to 26 U.S.C. § 6700 and 26 U.S.C. § 7408, from
selling the Tax Toolbox, a collection of pamphlets, record-keeping aids, a CD-Rom, and other
information, and from providing services to Tax Toolbox customers. Mr. Gleason appeals that
permanent injunction on two grounds. First, he claims that the materials comprising the Tax
Toolbox were never introduced into evidence at the hearing on the injunction. Second, he argues
that the bar on providing services to Tax Toolbox customers unduly restricts his ability to earn a
living. Because the record reflects more than ample evidence to support the District Court's

1

findings, including relevant portions and descriptions of the Tax Toolbox, and because the injunction's scope is appropriately tailored and does not unduly burden his livelihood, we affirm.

## I. Factual Background

For over fifteen years, Mr. Gleason has provided tax preparation and representation services individually and through Tax Toolbox, Inc., and My Tax Man, Inc. In 2000, Mr. Gleason, the President and CEO of My Tax Man, Inc., created the Tax Toolbox that, in the charitable words of the District Court, "aggressively promoted tax saving through home-based businesses."

In "no more than a couple of minutes a day," Mr. Gleason's materials asserted, "you transform your non-deductible personal expenses into legal and audit-proof business deductions" by following his tax strategies. A new business can "magically" erase taxes by purportedly creating deductions for weddings, college, "travel, meals, and golf, and cars and medical expenses, kids [sic] allowances, every day household expenses and much more."

According to Mr. Gleason, executing the Tax Toolbox's employment agreement between spouses and children eliminates many of life's more expensive costs. To deduct medical expenses, "[a]ll it takes is a business that you have, or can start, and a spouse who can become an employee . . . . Medical expenses that are usually subject to a 7.5% of income floor limitation are moved over to your business returns and become *100% deductible!*" Get a head start on a college or wedding fund by turning a child's "weekly allowance into a pay check and it's a business deduction for you." With the Tax Toolbox's promissory agreement form, the children "loan" the money back to their parents without money actually changing hands. Mr. Gleason called his methods "audit-proof" and provided a "100% Accuracy Guarantee" that promised to pay any "penalties or interest from our mistake," but not the underlying tax resulting from using the Tax Toolbox.

Mr. Gleason's misrepresentations about tax deductions rival his generous resume embellishments to induce purchases of the Tax Toolbox. His promotional materials boasted that he was an attorney when he was neither licensed to practice in any state nor a graduate of an accredited law school, that he was an enrolled agent with the IRS when that status had lapsed, and that he was an adjunct professor of business law and federal taxation when he could not provide one name of a person to corroborate his claim. The District Court found further fabrications from the self-proclaimed tax expert:

> a. falsely claiming to be . . . an editor and a reviewer of articles for *Newsweek* . . . ;
> b. falsely claiming that all of his tax coaches were CPAs and IRS Enrolled Agents;
> c. falsely claiming that he is such a good attorney that the government pays his fees, when he is not an attorney and has been awarded fees in only one case, for the relatively minor sum of $318.75;
> d. falsely claiming that he has never "lost a case in tax court" when Gleason admits that he has never even *tried* a case in Tax Court;
> [e.] disingenuously claiming that he has "*never* lost a tax court dispute to date" and that he "has a 100% success record in tax court" when Gleason is referring to cases he has *conceded* and defines "loss" to mean that he has never had a client receive a decision that they did not agree to;
> [f.] falsely claiming that over 50% of his audits result in *refunds*, when this figure includes audits resulting in "no changes" to the taxpayer's return;
> [g.] falsely claiming that customers would have "free Form 1040 preparation," when in reality the cost to Gleason's customers varies based on the number of schedules attached to the return;

[h.] falsely presenting "customer testimonials" in promotional materials, including that of "A.M.," who was not a customer but one of Gleason's own salespersons, Alexander Mandossian;

[i.] misleading customers by referring them to only certain IRS publications, but not IRS Publication 4035, which expressly warns taxpayers of the potential dangers of home-based business scams, claiming he need not do so on the specious ground that this publication was not "relevant" to his home-based business customers.

*United States v. Gleason*, No. 3:03-0311, 2004 WL 2483220, at *2 (M.D. Tenn. Aug. 25, 2004) (emphasis in original).

On April 10, 2003, the United States sued Mr. Gleason individually and d/b/a Tax Toolbox, Inc., and My Tax Man, Inc., seeking permanent injunctions under 26 U.S.C. §§ 7407-08. In spite of Mr. Gleason's continuing assertions of the Tax Toolbox's legitimacy, he stopped selling it in late 2003. On February 23, 2004, pursuant to 26 U.S.C. § 7407, the District Court permanently enjoined him from misrepresenting his eligibility to practice before the IRS and his experience or education as an income tax preparer, and from guaranteeing the payment of any tax refund or the allowance of any tax credit. Mr. Gleason did not appeal that injunction. On June 22, 2004, the District Court denied the Government's motion to enjoin Mr. Gleason permanently from acting as a federal income tax preparer, stating that "Mr. Gleason's primary business and livelihood is tax preparation and a total ban on his livelihood should not be undertaken lightly." The Government has withdrawn its appeal of that denial.

On August 25, 2004, the District Court issued a permanent injunction under 26 U.S.C. § 7408, prohibiting Mr. Gleason from selling or promoting the Tax Toolbox and from providing services to Tax Toolbox customers.[1] It is from this injunction that Mr. Gleason now appeals.

## II. Analysis

### A. Standard of Review

We review a district court's grant of a permanent injunction for abuse of discretion. *United States v. Szoka*, 260 F.3d 516, 521 (6th Cir. 2001); *United States v. Estate Pres. Servs.*, 202 F.3d 1093, 1097 (9th Cir. 2000). "The district court abuses its discretion if it 'applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact.' " *Szoka*, 260 F.3d at 521 (quoting *Waste Mgmt., Inc. of Tennessee v. Metro. Gov't of Nashville & Davidson County*, 130 F.3d 731, 735 (6th Cir. 1997)).

---

[1]The District Court later denied Mr. Gleason's motion to alter or amend this permanent injunction.

### B. The District Court Did Not Abuse Its Discretion in Issuing a Permanent Injunction

Section 7408 of the Internal Revenue Code empowers a district court to grant an injunction when (1) the defendant has engaged in conduct subject to penalty under 26 U.S.C. § 6700, and (2) injunctive relief is appropriate to prevent recurrence of such conduct.[2] *See United States v. Bell*, 414 F.3d 474, 477 n.2 (3d Cir. 2005); *United States v. Schiff*, 379 F.3d 621, 625 (9th Cir. 2004); *United States v. Buttorff*, 761 F.2d 1056, 1059 (5th Cir. 1985). Because section 7408 expressly authorizes the issuance of an injunction, the traditional requirements for equitable relief need not be satisfied. *Estate Pres. Servs.*, 202 F.3d at 1098.

### 1. Mr. Gleason's Conduct Subject to Penalty Under 26 U.S.C. § 6700

A person is subject to penalty under section 6700 when (1) he organized or participated in the sale of an entity, plan, or arrangement, (2) he made false or fraudulent statements regarding specified tax matters, including deductions, in connection with that organization or sale, (3) he knew or had reason to know that his statements were false or fraudulent, and (4) the statements pertained to a material matter.[3] *See Estate Pres. Servs.*, 202 F.3d at 1098.

First, the parties do not dispute that Mr. Gleason created the Tax Toolbox, that he participated in its sale, and that it is an "entity, plan or arrangement" within the meaning of section 6700(a)(1)(A). *See United States v. Raymond*, 228 F.3d 804, 811-12 (7th Cir. 2000) (describing the broad scope of section 6700(a)(1)(A)).

Second, the District Court is not clearly erroneous in finding that Mr. Gleason made false statements about the purported home-based business deductions that can be derived from using the Tax Toolbox. Mr. Gleason did not properly qualify his assertions about the deductibility of weddings, college, travel, meals, golf, cars, and everyday household expenses by stating that business expenses must be "ordinary and necessary" to the business, 26 U.S.C. § 162(a) (2005); *Commissioner v. Groetzinger*, 480 U.S. 23, 27-36 (1987), and that personal consumption

---

[2]Section 7408 provides in pertinent part:

(b) Adjudication and decree.--In any action under subsection (a), if the court finds--
(1) that the person has engaged in any specified conduct, and
(2) that injunctive relief is appropriate to prevent recurrence of such conduct,
the court may enjoin such person from engaging in such conduct or in any other activity subject to penalty under this title.
(c) Specified conduct.--For purposes of this section, the term "specified conduct" means any action, or failure to take action, which is--
(1) subject to penalty under section 6700 . . . .

[3]Section 6700 provides in pertinent part:

(a) Imposition of penalty.--Any person who--
(1)(A) organizes (or assists in the organization of)--
(i) a partnership or other entity,
(ii) any investment plan or arrangement, or
(iii) any other plan or arrangement, or
(B) participates (directly or indirectly) in the sale of any interest in an entity or plan or arrangement referred to in subparagraph (A), and
(2) makes or furnishes or causes another person to make or furnish (in connection with such organization or sale)--
(A) a statement with respect to the allowability of any deduction or credit, the excludability of any income, or the securing of any other tax benefit by reason of holding an interest in the entity or participating in the plan or arrangement which the person knows or has reason to know is false or fraudulent as to any material matter . . . .

expenditures must be "inextricably linked to the production of income," *Buttorff*, 761 F.2d at 1060 (quoting *Schulz v. Commissioner*, 686 F.2d 490, 493 (7th Cir. 1982)). *See also Estate Pres. Servs.*, 202 F.3d at 1101 (disallowing deduction of expenses related to ownership of a personal residence); *Grimes v. Commissioner*, 806 F.2d 1451, 1453-54 (9th Cir. 1986) (*per curiam*) (precluding deduction of personal expenditures to achieve the "American Standard of 'good living' "); *Kasun v. United States*, 671 F.2d 1059, 1061-63 (7th Cir. 1982) (disallowing deduction of commuting expense). Mr. Gleason also failed to warn customers that the notion of deducting wages and all medical expenses through executing employment contracts with family members is subject to close scrutiny and has been rejected in similar abusive tax shelter cases. *See generally Haeder v. Commissioner*, 81 T.C.M. (CCH) 987 (2001). His claim that his methods are "audit-proof" misleads customers because no tax arrangement is immune from IRS scrutiny, and in fact the IRS has begun auditing many Tax Toolbox customers. Furthermore, many of his statements to induce customers to purchase the Tax Toolbox, including those regarding his education and experience, were flagrantly false.

Third, the District Court is not clearly erroneous in concluding that Mr. Gleason knew or had reason to know that his statements were false. Factors relevant to this inquiry include: "(1) the extent of the defendant's reliance upon knowledgeable professionals; (2) the defendant's level of sophistication and education; and (3) the defendant's familiarity with tax matters." *Estate Pres. Servs.*, 202 F.3d at 1103. Mr. Gleason has not claimed to have relied upon knowledgeable professionals, but instead has promoted himself as a nationally recognized tax expert. Although neither attorney nor law professor, Mr. Gleason has been involved in tax preparation for over fifteen years. Moreover, in his deposition, Mr. Gleason conceded the complexity of Internal Revenue rules governing deductions for employment of family members and admitted knowledge of numerous cases where deductions for payments to children have been disallowed.

Fourth, the District Court's conclusion that Mr. Gleason's false statements pertained to a material matter is not clearly erroneous. Statements with a "substantial impact" on the decision to purchase a tax package pertain to a material matter. *Buttorff*, 761 F.2d at 1062 (quoting S. Rep. No. 97-494, 267 (1982), *reprinted in* 1982 U.S.C.C.A.N. 781, 1015). Mr. Gleason's exaggerations and misstatements about himself, his company, and the tax benefits of home-based businesses undoubtedly influenced individuals deciding whether to purchase the Tax Toolbox.

## 2. The Injunction Was Appropriate to Prevent Recurrence

Other Courts of Appeals have set out various factors for consideration in determining the need for an injunction to prevent future violations of section 6700, including:

> (1) the gravity of the harm caused by the offense; (2) the extent of the defendant's participation; (3) the defendant's degree of scienter; (4) the isolated or recurrent nature of the infraction; (5) the defendant's recognition (or non-recognition) of his own culpability; and (6) the likelihood that defendant's occupation would place him in a position where future violations could be anticipated.

*Estate Pres. Servs.*, 202 F.3d at 1105; *see also United States v. Kaun*, 827 F.2d 1144, 1149-50 (7th Cir. 1987). These factors strongly support the District Court's issuance of an injunction. Adherence to Mr. Gleason's tax strategies by his apparently large number of clients, which he advertised as over 250,000, indicates the possibility of significant harm to the federal treasury. Mr. Gleason's participation in this scheme was pervasive and central. Morever, he maintained at the injunction hearing that the Tax Toolbox offers legitimate advice. Furthermore, his continued tax practice places him in a position where future violations could be anticipated.

## C. Introduction of the Tax Toolbox at the Injunction Hearing

Mr. Gleason argues on appeal that the Tax Toolbox was never introduced into evidence at the hearing on the injunction, and that, therefore, there was insufficient evidence to support the issuance of the injunction. This argument borders on the frivolous. As Mr. Gleason admitted in his Answer and similarly advertised in his promotional materials, the Tax Toolbox is "a collection of tapes, pamphlets, workbooks, a CD-Rom and record-keeping aids." Sufficient portions and descriptions of the Tax Toolbox materials became part of the record through exhibits at the hearing on the injunction and through the testimony of various witnesses, namely Mr. Gleason himself.

## D. The Injunction Does Not Unduly Burden Mr. Gleason's Livelihood

Mr. Gleason challenges the scope of the injunction as an overly burdensome restriction on his ability to earn a living. As the District Court rightly remarked "a total ban on his livelihood should not be undertaken lightly." However, permanently enjoining him from providing services to Tax Toolbox customers is far from a total ban on his livelihood and is fully warranted in light of his egregious misrepresentations about tax deductions, his company, and his resume.

At the injunction hearing, Mr. Gleason and his counsel indicated that the Tax Toolbox constituted a relatively small portion of his overall tax practice and was, as the District Court described Mr. Gleason's position, "an unfortunate offshoot" of his primary business, My Tax Man, Inc. Mr. Gleason testified that he sold the Tax Toolbox for only three of his roughly fifteen years of tax preparation and that such sales were limited only to those who were already operating small businesses. Moreover, towards the end of the injunction hearing, Mr. Gleason's counsel asserted that, despite the Tax Toolbox's demise, Mr. Gleason still "provides services to a lot of entities." Based on these representations, the injunction will not overly restrict Mr. Gleason's ability to continue conducting his primary tax practice.

Even if the injunction encroaches on more of Mr. Gleason's livelihood than the transcript reflects, the injunction comports with applicable case law. Some courts have gone so far as issuing a lifetime ban on acting as an income tax preparer in the face of extreme misconduct. *See United States v. Nordbrock*, 38 F.3d 440, 447 (9th Cir. 1994) (finding no error in lifetime injunction prohibiting preparation of tax returns pursuant to 26 U.S.C. § 7407(b)); *United States v. Bailey*, 789 F. Supp. 788, 819 (N.D. Tex. 1992) (permanently enjoining individuals from acting as income tax preparers pursuant to 26 U.S.C. § 7407(b)). Others have enjoined a range of tax-related conduct pursuant to 26 U.S.C. § 7408 where, as in this case, violations of 26 U.S.C. § 6700 occurred. *See, e.g., United States v. Bell*, 414 F.3d 474, 477 n.3 (3d Cir. 2005) (permanent injunction); *Estate Pres. Servs.*, 202 F.3d at 1097 n.3 (preliminary injunction); *Kaun*, 827 F.2d at 1146 n.1 (permanent injunction); *United States v. Stephenson*, 313 F. Supp. 2d 1054, 1061-62 (W.D. Wash. 2004) (preliminary injunction).

In the instant case, the District Court's permanent injunction aligns with these cases and their applications of sections 7408 and 6700, and is especially appropriate to avert a serious conflict of interest. Allowing Mr. Gleason to continue providing services to Tax Toolbox customers would foster his direct financial interest in peddling further faulty tax advice to Tax Toolbox customers and in obstructing IRS audits to avoid malpractice liability for his abusive tax scheme embodied in the Tax Toolbox.

## III. Conclusion

Through the Tax Toolbox, Mr. Gleason systematically overstated the tax benefits of a home-based business without warning of well-established limitations in the tax code. Although, as Judge Learned Hand wrote, an individual "is not bound to choose that pattern which will best pay the Treasury," *Helvering v. Gregory*, 69 F.2d 809, 810 (2d Cir. 1934), the tax code does not grant

deductions for sham home-based businesses and a few minutes of daily paperwork.  Nor does the tax code tolerate Mr. Gleason's outright lies to induce purchases of his tax preparation product.  For the foregoing reasons, we affirm the decision of the District Court.