NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0879n.06

Case No. 13-4341

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Nov 21, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| ITS FINANCIAL, LLC; TCA FINANCIAL, | ) | OHIO |
| LLC; FESUM OGBAZION; and TAX TREE, | ) | |
| LLC, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |

**BEFORE: COOK and WHITE, Circuit Judges; MICHELSON, District Judge[*]**

**MICHELSON, District Judge.** This case concerns the scope of authority Congress gave courts to issue injunctive relief under § 7402 of the Internal Revenue Code. Specifically, we consider whether that provision permits a court to shut down the business of a tax preparation franchisor not directly involved in the preparation of tax returns. In light of the factual findings made by the district court, we find that the court had authority under § 7402(a) to issue the injunction.

---

[*]The Honorable Laurie J. Michelson, United States District Judge for the Eastern District of Michigan, sitting by designation.

### I.      Background

Appellant Fesum Ogbazion is the founder, CEO, and sole owner of Appellants ITS Financial, LLC; TCA Financial, LLC; and Tax Tree, LLC. TCA Financial is the holding company for ITS Financial. ITS Financial ("ITS") operates a nationwide tax preparation franchise called Instant Tax Service. Ogbazion established Tax Tree to provide loans and other bank products for ITS franchises. ITS proclaims itself the fourth largest tax preparation franchise in the country, with hundreds of locations. The Internal Revenue Service ("IRS") began investigating Ogbazion and his companies after compliance visits and audits of his franchisees revealed a pattern of misconduct. This civil action followed, in March 2012.

In its complaint, the Government alleged that Appellants violated § 6701 of the Internal Revenue Code, which generally prohibits causing the understatement of tax liability, for which the Government sought injunctive relief under I.R.C. § 7408.[1] And second, the Government

---

[1] 26 U.S.C. § 6701(a) provides for imposing penalties against

Any person—

(1) who aids or assists in, procures, or advises with respect to, the preparation or presentation of any portion of a return, affidavit, claim, or other document,

(2) who knows (or has reason to believe) that such portion will be used in connection with any material matter arising under the internal revenue laws, and

(3) who knows that such portion (if so used) would result in an understatement of the liability for tax of another person, . . . .

The term "person" is defined to "include an individual, a trust, estate, partnership, association, company or corporation." 26 U.S.C. § 7701(a)(1). 26 U.S.C. § 7408(b) provides:

In any action under subsection (a), if the court finds—

(1) that the person has engaged in any specified conduct, and

(2) that injunctive relief is appropriate to prevent recurrence of such conduct,

the court may enjoin such person from engaging in such conduct or in any other activity subject to penalty under this title.

alleged that Appellants engaged in conduct substantially interfering with the administration and enforcement of the internal revenue laws, making injunctive relief also appropriate under 26 U.S.C. § 7402(a).[2]

In October 2012, as tax season approached, Appellants and the Government negotiated a stipulated preliminary injunction. Among other things, Appellants agreed to instruct their franchisees not to file tax returns using pay stubs instead of W-2s, to stop charging certain fees for tax preparation, and to offer refund anticipation loans only through a third-party lender. Appellants also agreed to a court-appointed third-party monitor to ensure compliance.

In November 2013, after a nine-day bench trial, and on the strength of 594 findings of fact and 152 conclusions of law, the district judge issued a permanent injunction enjoining Appellants from, among other things, "[o]perating, or being involved with in any way, any work or business relating in any way to preparation of tax returns." Order of Permanent Injunction, United States v. ITS Fin., LLC, No. 12-cv-95, 2013 WL 6421916, at *1 (S.D. Ohio Nov. 6, 2013); *see* Decision, United States v. ITS Fin., LLC, No. 12-cv-95, 2013 WL 5947222 (S.D. Ohio Nov. 6, 2013).

Following is a brief summary of the district court's extensive findings.

---

"Specified conduct" is defined as "any action, or failure to take action" subject to penalty under section 6701, among others. 26 U.S.C. § 7408(c).

[2] 26 U.S.C. § 7402(a) provides:

The district courts of the United States at the instance of the United States shall have such jurisdiction to make and issue in civil actions, writs and orders of injunction, and of *ne exeat republica*, orders appointing receivers, and such other orders and processes, and to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws. The remedies hereby provided are in addition to and not exclusive of any and all other remedies of the United States in such courts or otherwise to enforce such laws.

The ITS business model began with luring low-income customers by advertising tax refund anticipation loans that were rarely awarded and sometimes not in fact available. Once the customers were in the door, it was easier to convince them to let ITS file their tax returns. Or, in some cases, file their tax returns without permission, using information obtained in the loan application. ITS franchises charged deceptive and exorbitant fees to file the returns, which were typically straightforward and took about fifteen minutes to prepare and file. The court-appointed third-party monitor found that in January 2013, the average total fee charged to ITS customers, including tax preparation and bank product fees, was $566.18—more than double the total fees that ITS's major competitors charged. Ogbazion and ITS Financial developed this system and trained franchisees to implement it. The ITS franchisee manual even instructed franchisees to lie to the IRS about the fees they charged.

ITS trained franchisees to file tax returns using a pay stub rather than a W-2. This enabled ITS franchisees to file the tax return early, before the customer could go somewhere else to file. Because of its unreliability, the IRS prohibits the practice except in certain limited circumstances. ITS therefore trained and encouraged franchisees to conceal their use of pay stub filing from the IRS, such as by creating fake W-2s. The district court found that ITS's practice "[i]n the aggregate," "inevitably result[ed]" in the understatement of tax liability. Decision, 2013 WL 5947222, at *28.

ITS also obstructed and circumvented tax laws through their fraudulent applications for and use of electronic filer's identification numbers, or EFINs. The IRS uses EFINs to monitor and regulate electronic filing of tax returns. Suspension and termination of EFINs is one of the sanctions the IRS uses to enforce tax laws. EFINs are not transferable and a unique EFIN is required for every location from which electronic returns are filed. ITS fraudulently obtained

hundreds of EFINs and loaned them out to ITS franchisees when their EFINs were suspended or terminated. ITS also encouraged its franchisees to fraudulently obtain back-up EFINs. ITS lied to the IRS about its use of EFINs, and encouraged its franchisees to lie about it.

The third-party monitor appointed by the court to monitor Appellants' compliance with the stipulated preliminary injunction randomly selected ITS customers throughout the country and examined the franchisees' records for those customers. The sample comprised three percent of the total returns processed by ITS franchisees. The monitor found widespread non-compliance. Of the franchisees examined in January 2013, more than 75 percent were non-compliant in some respect with the preliminary injunction's requirements for customers who applied for a refund anticipation loan, and nearly 70 percent were non-compliant with requirements for customers who did not apply for the refund anticipation loan. Of franchisees examined in February 2013, more than 57 percent failed to comply with at least one of the preliminary injunction requirements for customers who applied for refund anticipation loans, and more than 62 percent failed to comply with at least one of the preliminary injunction requirements for customers who did not apply for refund anticipation loans.

ITS had about 150 franchisees between 2011 and 2013. ITS franchisees filed more than 110,000 returns each year in 2011 and 2012, and about 80,000 returns in 2013. The district court credited the testimony of the Government's expert, who concluded based on a random sample of 480 tax returns prepared by ITS franchisees in five cities in the 2011 tax filing season that the true value of the tax harm for that year, across those five cities, was between $10 million and $25 million. The district court concluded that the harm to the public—including the Government, ITS customers, and the lenders and service providers who conducted business with ITS—was "extensive and egregious, indeed appalling," especially given "the nature of Instant Tax

Service's core customer—the working poor—who are particularly vulnerable to Defendants'

fraudulent practices." Decision, 2013 WL 5947222, at *84.

## II.     Standard of Review

This court reviews a district court's grant of a permanent injunction for abuse of

discretion. *United States v. Gleason*, 432 F.3d 678, 681 (6th Cir. 2005). "The district court

abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard,

or relies on clearly erroneous findings of fact." *Id.* at 681–82 (internal quotation marks omitted).

A finding of fact is clearly erroneous when "although there is evidence to support it, the

reviewing court on the entire evidence is left with the definite and firm conviction that a mistake

has been committed." *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985) (quoting *United*

*States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Under this standard, "[i]f the district

court's account of the evidence is plausible in light of the record viewed in its entirety, the court

of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it

would have weighed the evidence differently." *Id.* at 573–74.

## III.    Errors of Fact

We first address Appellants' claim that the district court made clearly erroneous findings

of fact. Appellants challenge the following findings made by the district court:

> 195. When using a pay stub to prepare a tax return, the income information is not always accurate, and it can be off for a variety of reasons. In the aggregate, filing tax returns based on paystubs inevitably results in the understatement of customers' tax liabilities. ITS Financial acknowledges that understatement of income inevitably results from paystub filing, which is why ITS Financial employees claim that company policy is to instruct customers that they are liable to the government for any understatement.

> 196. ITS Financial knows that tax returns prepared using paystubs are inaccurate more often than not.

Decision, 2013 WL 5947222, at *28 (internal citations omitted). To make these findings, the judge relied on testimony from Defendant Ogbazion, IRS manager Sam Anderson, and ITS Franchise Support/Relationship Manager Anita Boynton, emails between ITS Franchise Support/Relationship Manager Amber Bennett and a franchisee, and a PowerPoint presentation used to train ITS "Area Developers" and select franchisees on pay-stub filing. We have reviewed these materials and find the district judge's findings were not clearly erroneous.

Defendant Ogbazion agreed during his testimony that "[i]f you prepare a tax return using a pay stub, it's not always accurate and does not always have all of the information on there," and "[w]hen using a pay stub to prepare a tax return, the income information can be off for a variety of reasons." IRS manager Anderson testified that preparing a tax return on a pay stub rather than a W-2 "can leave out" deferred compensation such as 401K contributions, which potentially affects tax liability. When asked what effect "a substantial volume of pay stub filing" would have on the accuracy of income reported on tax returns, Anderson said "[i]n the aggregate, it could have a multitude, it can have no effect possibly. It can have overstated numbers. It could have understated numbers." And ITS employee Boynton, who had been a tax return preparer before she became a manager, agreed during her testimony that she was "aware that tax returns prepared using pay stubs are inaccurate more often than not," that "the last paycheck stub varies from a W-2 more often than not," and that "the income reflected on a return prepared on a pay stub can vary from income reflected on a return prepared based on a W-2."

In the emails that the district judge relied on, a franchisee told ITS employee Bennett that a customer was asking him to pay the IRS what the customer owed for an overstated return because the customer maintained it was due to the franchisee's error. The franchisee told Bennett, "The reason for her owing money to the IRS is not data entry error, but the fact that her

W2 numbers were different than the numbers on her pay stub." Bennett replied: "We always require clients to pay back monies they were given that they should not have. Paycheck filing is illegal though so that argument is not one that I would voice too terribly much."

And finally, the "Stub Shop" training slides include a section titled "Potential Problems" that warns that using the "gross pay" amount on the pay stub rather than the "net pay" amount could result in a bill from the IRS for unpaid taxes with interest.

It is clear from this evidence that pay-stub filing often results in understatement of tax liability, and ITS knew it. It is also clear from this and other evidence that pay-stub filing was common at ITS franchises. The district court's conclusion that understatement of tax liability "inevitably results" may have gone further than we would go, but it is a plausible account of the evidence in the record as a whole.

Appellants argue that "given Instant Tax's typical customer, it is actually highly unlikely" that a return using a pay stub will have to be amended because "[t]he reason that paystubs can sometimes have different income numbers than the W-2 is that some taxpayers receive deferred compensation, 401(k) contributions, and/or life insurance payments made by the employer that are reflected on the W-2 but not the paystub," but "[i]t was undisputed at trial that Instant Tax's typical customer is a low-income person," who "would not be likely to receive deferred compensation or 401(k) contributions."[3] This argument is plainly contradicted by a series of emails exchanged in 2011 by Instant Tax Service employees and admitted as evidence at the trial. The emails discuss amendments that need to be filed based on W-2s for eleven

---

[3] ITS Financial's former Vice President of Marketing Greg Woryk testified at the trial that ITS targeted low-income single parents because "[t]hose would be the people most likely to need an anticipation loan on their tax refund. . . . Because they don't have a lot of money and they're probably living check to check."

customers for whom returns were originally filed using a pay stub. For example, one email from a client to ITS Franchise Support/Relationship Manager Anita Boynton states: "[L]ast year you prepared for me an amendment. I am emailing you to ask you to do it again this year. This year again my taxes were done off of my last pay check stub and my AGI was a little off but also I didn't have the form from my school yet as well. . . . He used the wrong amount off of my paystub because he included my tuition reimbursement . . . ."

On this evidence, the district court's findings that "[i]n the aggregate, filing tax returns based on paystubs inevitably results in the understatement of customers' tax liabilities," and "ITS Financial acknowledges that understatement of income inevitably results from paystub filing" are not clearly erroneous. In any event, even if the use of the term "inevitably" were erroneous, it was harmless because, as we explain below, § 7402 affords the district court ample authority to enjoin Appellants' tax-preparation businesses based on the court's unchallenged findings.

## IV.    Scope of the Injunction

The district court enjoined Appellants from "[o]perating, or being involved with in any way, any work or business relating in any way to preparation of tax returns." Appellants argue that the injunction was not authorized by 26 U.S.C. §§ 7402 or 7408 because it shuts down the Defendant companies entirely, instead of enjoining specific conduct that violates the tax code or interferes with the enforcement of the internal revenue laws. According to Appellants, a "business death penalty" injunction is authorized only by 26 U.S.C. § 7407, but that statute "is not applicable to ITS, and was appropriately not raised or discussed in this case." Section 7407 authorizes a court to enjoin a tax return preparer from acting as a tax return preparer.[4] Here, the

---

[4] Section 7407 states: "If the court finds that a tax return preparer has continually or repeatedly engaged in any conduct described in subparagraphs (A) through (D) of this subsection and that

district court enjoined the operators of a tax return preparation franchise from operating any business related to tax return preparation.

Appellants acknowledge that several courts have enjoined tax professionals from preparing returns under § 7402, but point out that those cases relied on § 7407 as well as § 7402. They also argue that "[w]hile previous cases have specifically enjoined preparers from preparing taxes and giving advice to customers, no case has ever barred a franchisor or other company from working in the tax industry generally." The fact that no other court has ever granted the precise injunction granted in this case does not mean the statute does not authorize it. That is especially true in light of the extraordinary facts of this case. The district court's findings of fact depict wrongdoing that is extreme in both magnitude and multitude.

If Appellants are correct, a court could enjoin their franchisees from engaging in the tax preparation business (and at least one court has done just that, *see* Stipulated Order for Permanent Injunction, United States v. Tewolde, No. 12-cv-00516 (D. Nev. Dec. 27, 2012) (No. 29)), but could not so enjoin Appellants themselves, even where the court found that Appellants trained and encouraged the franchisees to violate and thwart the internal revenue laws. Appellants' argument is not persuasive.

### A. Authority under § 7402(a)

The plain text of § 7402(a) provides a broad grant of authority to enter injunctions "as may be necessary or appropriate for the enforcement of the internal revenue laws . . . in addition to and not exclusive of any and all other remedies . . . ." 26 U.S.C. § 7402(a). Numerous courts have commented on the statute's expansive scope. *See, e.g.*, *United States v. Ernst & Whinney*,

---

an injunction prohibiting such conduct would not be sufficient to prevent such person's interference with the proper administration of this title, the court may enjoin such person from acting as a tax preparer." 26 U.S.C. § 7407(b)(2).

735 F.2d 1296, 1300 (11th Cir. 1984) ("The language of 7402(a) encompasses a broad range of powers necessary to compel compliance with the tax laws."); *United States v. First Nat'l City Bank*, 568 F.2d 853, 855–56 (2d Cir. 1977) ("The language of this statute is broad and clear. . . . We decline to construe such a broad statutory mandate so restrictively as to add nothing to the power conferred by the All Writs Act, 28 U.S.C. s 1651 (1970)."); *Brody v. United States*, 243 F.2d 378, 384 (1st Cir. 1957) ("It would be difficult to find language more clearly manifesting a congressional intention to provide the district courts with a full arsenal of powers to compel compliance with the internal revenue laws."); *United States v. Kaun*, 633 F. Supp. 406, 409 (E.D. Wis. 1986) ("By its very terms, this statutory provision authorizes the federal district courts to fashion appropriate, remedial relief designed to ensure compliance with both the spirit and the letter of the Internal Revenue laws—all without enumerating the many, particular methods by which these laws may be violated or their intent thwarted."), *aff'd on other grounds*, 827 F.2d 1144 (7th Cir. 1987).

The Supreme Court has also commented on the broad scope of power granted by § 7402(a). In *United States v. First National City Bank*, 379 U.S. 378 (1965), the Court held that § 7402(a) authorized a district court to temporarily enjoin a bank from transferring any property or rights to property held for a foreign corporation while the Government sought to foreclose a tax lien against it. *Id.* at 380, 385. The Court commented, "[O]ur review of the injunction as an exercise of the equity power granted by 26 U.S.C. § 7402(a) must be in light of the public interest involved: 'Courts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved.'" *Id.* at 383 (citation omitted).

Section 7402(a) is not limited to enjoining specific conduct proven to violate tax laws, as Appellants argue. (*See* Appellants' Br. at 11–12.) Courts have invoked § 7402(a) to enter an injunction even where there was no violation of the internal revenue laws. *See, e.g.*, *United States v. Ekblad*, 732 F.2d 562, 563 (7th Cir. 1984) (per curiam) (affirming preliminary injunction enjoining appellant, who had filed a common-law lien against the property of an IRS employee assigned to collect his delinquent taxes, from preparing, publishing, or filing any similar document, and enjoining the county from accepting any such documents from him); *United States v. Hart*, 701 F.2d 749, 750 (8th Cir. 1983) (per curiam) (affirming injunction enjoining appellant, who had filed liens against property owned by certain IRS employees and purported to establish a "posse comitatus," from making arrests of or otherwise attempting to hinder the IRS employees in the performance of their official duties). Courts have also invoked § 7402(a) to issue injunctions against encouraging others to violate the tax laws, even where the defendants were not themselves preparing tax returns. *See, e.g.*, *United States v. Landsberger*, 692 F.2d 501, 502 (8th Cir. 1982) (affirming injunction issued under §§ 7402(a) and 7407 permanently enjoining defendant from marketing and promoting his tax haven scheme); *United States v. May*, 555 F. Supp. 1008, 1009–11 (E.D. Mich. 1983) (enjoining defendant under §§ 7402(a) and 7407 from disseminating false information regarding the taxability of wages and salaries).

Appellants acknowledge that the "language is indeed broad," but argue "it is completely unprecedented and improper for a court to use § 7402 as the basis to issue a blanket injunction shutting down an entire business." They rely on *United States v. Stover*, No. 08-6018-CV, 2010 WL 1690038, 2010 U.S. Dist. LEXIS 41255 (W.D. Mo. Apr. 27, 2010), in which the court expressed "concern about the scope of injunctive relief sought" by the Government. 2010 WL

1690038, at *2. The facts of *Stover* provide a telling contrast to this case. There, the defendant maintained he had stopped offering the problematic tax arrangements when the IRS issued guidance indicating they were fraudulent, six years before the litigation. *Id.* The court said, "If [Defendant] has not promoted Roth S arrangements for over six years, it is hard to see why an injunction is necessary to stop his conduct." *Id.* Here, Appellants repeatedly violated a conduct-specific preliminary injunction (to which they stipulated in order to carry on their business while this case was pending) although they knew they were being monitored for compliance by a neutral third party who was reporting to the court. The injunction in this case may be extreme, but it is not unfounded.

Moreover, the injunction is not as unprecedented as Appellants claim. The district court in this action cited numerous cases in which courts enjoined tax preparers from continuing to do business, and the parties cite a few more in their briefs to this court. Some went further than enjoining the defendants from preparing tax returns to enjoin them from operating a tax return preparation business more generally. *See, e.g.*, *United States v. Brier*, No. 09-607, 2010 U.S. Dist. LEXIS 121976, at *48 (D.R.I. Nov. 5, 2010) (enjoining a tax preparation service business with eight locations, and its owner and officers, from "directly or indirectly acting as federal income tax return preparers . . . or assisting in the preparing and filing of federal income tax returns"); *United States v. Gibson*, No. 08-14700, 105 A.F.T.R.2d 1572, 2010 U.S. Dist. LEXIS 27831, at *13 (E.D. Mich. Mar. 24, 2010) (enjoining tax preparer from "preparing or assisting in the preparation of federal tax returns for anyone but himself, advising anyone about such preparation, owning or managing any tax preparation business, representing customers before the IRS or engaging in any other similar conduct . . . ."); *United States v. Buddhu*, No. 08-cv-0074, 2009 WL 1346607, at *5 (D. Conn. May 12, 2009) (enjoining a father-daughter tax preparing

team from "preparing federal income tax returns, . . . advising, assisting, counseling, or instructing anyone about the preparation of a federal tax return; [and] owning, managing, controlling, working for, or volunteering for a tax-return-preparation business; [and] from promoting tax-fraud schemes").

Although all of these cases cite § 7407 as well as § 7402, several held that the injunction was independently authorized under § 7402(a). *See, e.g.*, *United States v. Elsass*, 978 F. Supp. 2d 901, 941 (S.D. Ohio 2013) ("[E]ven if the Defendants' business structure somehow left them outside the legal definition of tax return preparers, broad relief would still be appropriate, as § 7402(a) is undoubtedly designed to prevent individuals from undermining the Nation's tax laws through exploiting loopholes in the I.R.C.'s overall regulatory scheme."), *aff'd*, 769 F.3d 390, 398 (6th Cir. 2014); *United States v. Littrice*, No. 08 C 2432, 108 A.F.T.R.2d 5710, 2011 U.S. Dist. LEXIS 89553, at *9–10 (N.D. Ill. Aug. 8, 2011) ("[G]iven the breadth and gravity of Defendants' conduct, the Court also grants the United States' motion as to Section 7402, which grants the Court broad powers to enjoin conduct when necessary to enforce the internal revenue laws."); *United States v. Jones*, No. 09-cv-00547, 108 A.F.T.R.2d 5184, 2011 U.S. Dist. LEXIS 73987, at *23–25 (D. Idaho July 7, 2011) (holding in a separate analysis under § 7402(a) that a permanent injunction requiring that defendant "notify her customers, provide a customer list, and not prepare tax returns for others" was warranted and defendant's "fraudulent activities are sufficiently egregious that a narrow injunction prohibiting only certain enjoinable activities is unlikely to prevent continued interference by Jones with the proper administration of the internal revenue laws."); *United States v. Pugh*, 717 F. Supp. 2d 271, 300 (E.D.N.Y. 2010) (holding in a separate analysis that "permanent injunctive relief under I.R.C. § 7402 (a) is appropriate to prevent [defendants] from continuing to interfere with the administration and enforcement of the

internal revenue laws"); *Buddhu*, 2009 WL 1346607, at *5 ("The Court finds the United States has presented persuasive evidence that it, the public, and the Buddhus' clients will suffer irreparable harm if they are not enjoined. . . . The Court therefore finds an injunction is also appropriate under 26 U.S.C. § 7402."); *United States v. Sperl*, No. 06-0175, 2008 WL 2699402, at *10 (M.D. Tenn. June 30, 2008) ("The Court further finds that Defendants engaged in conduct that interferes with the enforcement of the internal revenue laws, and that injunctive relief is also appropriate pursuant to the Court's inherent equity powers and 26 U.S.C. § 7402(a) to prevent recurrence of such conduct."); *United States v. Fernandez*, No. 04-CV-1772, 95 A.F.T.R.2d 2406, 2005 U.S. Dist. LEXIS 9757, at *10 (M.D. Fla. May 4, 2005) ("The record shows that, absent a permanent injunction, Burgos likely will continue to violate Internal Revenue Code section 6694 and otherwise engage in conduct that substantially interferes with the proper administration of the internal revenue laws. Accordingly, the Court finds that Burgos also should be permanently enjoined from acting as an income tax return preparer under Internal Revenue Code section 7402."); *United States v. The Joy Found.*, No. 02-1069, 2002 WL 32082896, at *1 (C.D. Ill. Oct. 18, 2002) ("The Court further finds that Malone engaged in conduct [that] interferes with the administration and enforcement of the Internal Revenue laws and that injunctive relief is appropriate to prevent the recurrence of such conduct under the Court's inherent equity powers as provided in IRC § 7402(a).").

Appellants' argument hinges on the fact that the district court did not rely on § 7407, which they say is "[t]he only section of the tax code that provides for the Court to shut down a tax preparation business." Yet the district court specifically found that a more limited injunction that would have allowed Appellants to stay in business would not provide sufficient assurance against the likelihood of recurrence—just as § 7407 permits the "business death penalty" in cases

where enjoining specific conduct would not be sufficient to prevent future interference with the revenue laws. Essentially the same standard has been met. The difference is that § 7407 is directed at tax return preparers, and Appellants' business model and violative conduct extended beyond direct preparation of taxes, to operating a nationwide network of franchises. We see no reason that a franchisor should be allowed to continue where its franchisee could not. To the contrary, the violations here are even more serious and harmful than those that can be perpetrated by a lone tax preparer. Nor should Appellants be permitted to insulate themselves from accountability for their egregious conduct by ensuring they delegate to their franchisees any responsibilities that might bring them within the technical definition of a tax preparer.[5] We believe that Congress provided a broad grant of authority in § 7402(a) for just this type of situation.[6]

---

[5] Whether Tax Tree, the company Ogbazion formed to offer loans and other bank products in connection with his tax return preparation, can be enjoined is less clear, as discussed below.

[6] Appellants did not argue that the scope of § 7402(a) should not be interpreted so broadly that it renders § 7407 superfluous, or that by choosing only to regulate tax preparers under § 7407, Congress evidenced an intent not to regulate tax advisers. We would not be persuaded if they had. The Eleventh Circuit disposed of these arguments neatly in their discussion of the legislative history of § 7407 (enacted in 1976) and § 7402(a) (enacted in 1954):

> While the legislative history of the 1976 tax preparer laws contains no discussion of § 7402(a) and indicates that Congress did not consider § 7402(a) as providing a remedy against tax preparers, we note that "the views of one Congress as to the construction of a statute adopted many years before by another Congress have 'very little, if any, significance.'" *United States v. Southwestern Cable Co.*, 392 U.S. 157, 170, 88 S.Ct. 1994, 2001, 20 L.Ed.2d 1001 (1968). Moreover, discussion of § 7402(a) by the 97th Congress in passing the Tax Equity and Fiscal Responsibility Act of 1982, P.L. 97–248, demonstrates congressional awareness of the injunctive provision's breadth. The legislative history of the 1982 Act notes that § 7402 injunction is additional to the tax preparer injunction, recognizes "the great latitude inherent in [§ 7402] equity jurisdiction to fashion appropriate equitable relief," and states, citing *United States v. Landsberger*, that the district court can "enjoin any action to impede proper administration of the tax law or any action which violates criminal statutes." *See* Senate Finance Committee, Tax

Because we find the district court had authority under § 7402(a) to enter the injunction, we do not address whether it was also authorized by § 7408. We therefore also do not address whether the Court erred in finding that § 6701 (the statute upon which the § 7408 violation was predicated) applied to ITS.

### B. Vagueness and Overbreadth

Appellants also argue that the injunction is impermissibly vague under Federal Rule of Civil Procedure 65(d). Rule 65(d) states that every order granting an injunction must "describe in reasonable detail . . . the act or acts restrained or required." The Supreme Court has emphasized that Rule 65(d) was meant to "prevent uncertainty and confusion on the part of those faced with injunctive orders . . . ." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974).

Appellants primarily rely on an unpublished decision in which a panel of this Court vacated a "one sentence injunction" enjoining a defendant "from continuing to violate the Plaintiff's rights." *Owner-Operator Independent Drivers Ass'n v. Bissell.*, 124 F.3d 199 (unpublished table decision), 1997 WL 525411, at *2 (6th Cir. 1997) (per curiam), *cert. denied*, 522 U.S. 1109 (1998). The injunction language at issue here is not nearly so vague. The district court's order in this case enjoined Appellants from "[o]perating, or being involved with in any

---

Equity and Fiscal Responsibility Act of 1982, S. Rep. No. 494, 97th Cong., 2d Sess., *reprinted in* 1982 U.S. Code Cong. & Adm. News pp. 781, 1016–17.

Furthermore, Congress intended the tax preparer regulations to be cumulative. Section 7407(c) recognizes that the injunctive action against a tax preparer is meant to be "separate and apart from any other action brought by the United States against such income tax preparer or any taxpayer." The intent that § 7407 be just one weapon in the arsenal against tax preparer abuses does not suggest any intent to deprive the IRS of power to regulate activities not covered by the tax preparer statutes.

*Ernst & Whinney*, 735 F.2d at 1301–02 n.12.

way, any work or business relating in any way to preparation of tax returns." This specifically identifies the acts restrained.

There is some ambiguity in the phrases "involved with in any way" and "relating in any way to." But Defendants operated businesses related to tax preparation for many years, and know well what relates to tax preparation. Their protest that the injunction might be interpreted to include selling office supplies or cashing checks is unconvincing. The district court was entitled to expect that the injunction would be interpreted with a modicum of common sense. *See Mayfield Eng'g, Inc. v. Ohio Tpk. Comm'n*, 173 F.3d 855 (unpublished table decision), 1999 WL 196562, at \*3 (6th Cir. 1999) ("Rule 65(d) requires only that the court describe the acts to be enjoined in 'reasonable detail.'"). Moreover, the district court retained jurisdiction for the "purpose of implementing and enforcing the final judgment and any additional orders necessary and appropriate to the public interest," and is therefore available to clarify the injunction should the need arise. Order of Permanent Injunction, 2013 WL 6421916, at \*2. In fact, Appellants have already requested and received clarification from the district court on an aspect of the injunction. *See Elsass*, 769 F.3d at 398 (holding the district court's injunction was not vague and overbroad in part because "the court offered to provide clarification as needed").

Appellants also argue that the injunction is broader than necessary to "fulfill the legislative purpose" of §§ 7402 and 7408. In particular, they note that "[n]ot only does it prohibit defendants from operating tax businesses themselves, but prohibits them from doing any kind of business or having any involvement with other entities who are in the tax industry." It is clear from the district court's findings that Appellants' *modus operandi* was to train and encourage its franchisees to flout the tax laws, using the franchisees to distance themselves from the illegality. Enjoining Appellants from engaging in tax preparation themselves would thus not be sufficient

to ensure compliance with the internal revenue laws. Appellants complain that Ogbazion "should be free to pursue industries that are related in some way to tax preparation (the only business he has ever pursued), especially when an ancillary business would not put him in a position to interfere with the tax laws or have any effect on the contents of tax returns." But this is precisely what the district court intended to enjoin, and rightfully so. Ogbazion's actions establish that he cannot be trusted to comply with tax laws. And the Court is at a loss to conceive—and Appellants do not suggest—how a business could be related in some way to tax preparation and yet not put him in a position to interfere with the tax laws.[7]

We conclude the injunction is neither vague nor overbroad.

**V.      Consideration of Irrelevant Factors**

Appellants' second major claim of error is that the district court "gave weight to various matters that were irrelevant to the statutory determination before it." In particular, Appellants complain that it was irrelevant that they willfully failed to pay employment withholding taxes,

---

[7] Appellants base their vagueness and overbreadth objections to the permanent injunction on the injunction's first provision, which enjoins them from directly or indirectly, by use of any means, operating, or being involved with in any way, any work or business relating in any way to preparation of tax returns, and orders them to cease operating. Order of Permanent Injunction, 2013 WL 6421916, at *1. The permanent injunction contains other provisions. Those provisions provide that Appellants are enjoined from directly or indirectly: acting as tax return preparers; acting or operating as a franchisor of businesses relating in any way to preparation of tax returns; supervising or managing or assisting tax return preparers; owning, operating, or engaging in work or a business relating in any way to preparation of tax returns; assisting with or directing the preparation or filing of tax returns, amended returns, claims for refund, or other related documents; representing before the IRS any person or organization whose tax liabilities are under examination or investigation by the IRS; organizing, promoting, providing, advising, or selling any business or work of tax services; engaging in conduct subject to penalty under any provision of the Internal Revenue Code; and engaging in any other conduct that substantially interferes with the proper administration and enforcement of the internal revenue laws. *Id.* at *1–2. Although these other provisions effectively preclude Appellants from directly or indirectly working in, or operating, a business related to federal tax return preparation, Appellants do not challenge these provisions.

caused an employee to forge customers' names on duplicate loan checks and used those funds to pay ITS Financial's operating expenses, falsely advertised loan products that did not exist, deceived creditors about corporate assets, charged excessive and deceptive fees to customers, and violated the Truth in Lending Act, the Equal Credit Opportunity Act, and Indiana's lender-licensing laws. They argue that the district court created new law by holding that "conduct that constitutes 'fraudulent and misleading commercial practices' is also subject to permanent enjoinment' under § 7402."

Section 7402(a) authorizes district courts to issue injunctions "as may be necessary or appropriate for the enforcement of the internal revenue laws." As we have previously held regarding § 7408, because the statute expressly authorizes the issuance of an injunction, the traditional requirements for equitable relief need not be satisfied. *See Gleason*, 432 F.3d at 682; *see also First Nat'l City Bank*, 379 U.S. at 383.

As noted above, the district court cited many cases in which an injunction was issued under § 7402 as well as § 7407. These cases contain little or no discussion of the standard to be used to determine whether an injunction is "necessary or appropriate" under § 7402(a).

The standard the district court applied in this case was whether Appellants were "reasonably likely to violate the federal tax laws again." Decision, 2013 WL 5947222, at *93. To predict the likelihood of future violations, the district court continued, a court must assess "the totality of the circumstances surrounding the defendant and his violations" by considering such factors as "(1) the gravity of harm caused by the offense; (2) the extent of the defendant's participation and the defendant's degree of scienter; (3) the isolated or recurrent nature of the infraction and the likelihood that the defendant's customary business activities might again

involve the defendant in such transaction; (4) the defendant's recognition of his or her own culpability; and (5) the sincerity of the defendant's assurances against future violations." *Id.*

This standard is often used to determine whether an injunction is appropriate under §§ 6700 and 7408, to prevent recurrence of specified conduct in violation of the tax laws. *See Gleason*, 432 F.3d at 683. It has also been applied to determine whether an injunction is appropriate under § 7407. *See, e.g.*, *Abdo v. I.R.S.*, 234 F. Supp. 2d 553, 565 (M.D.N.C. 2002) (applying the standard to issue an injunction under both § 7407 and § 7408), *summarily aff'd*, 63 F. App'x 163 (4th Cir. 2003); *Buddhu*, 2009 WL 1346607, at *4 (quoting *S.E.C. v. Softpoint, Inc.*, 958 F. Supp. 846, 867 (S.D.N.Y. 1997)); *Littrice*, 2011 U.S. Dist. LEXIS 89553, at *7 (borrowing the standard from *United States v. Raymond*, 228 F.3d 804, 813 (7th Cir. 2000), which affirmed an injunction issued under § 7408).

To support its use of this standard, the district court primarily relied on a case in which a federal district court in California entered a permanent injunction under § 7402(a) requiring an individual "to withhold and pay over federal employment and unemployment taxes, and to file all required federal returns." *United States v. Thompson*, 395 F. Supp. 2d 941, 942, 945–46 (E.D. Cal. 2005). The *Thompson* court cited *SEC v. Murphy*, 626 F.2d 633 (9th Cir. 1980). There, the "reasonable likelihood of future violations standard" was applied to determine whether a permanent injunction was warranted against a defendant who violated securities laws. *See Murphy*, 626 F.3d at 655. The *Murphy* court said that "[i]n predicting the likelihood of future violations, a court must assess the totality of the circumstances surrounding the defendant and his violations," and identified a similar (though not identical) non-exhaustive list of factors to be considered: "the degree of scienter involved; the isolated or recurrent nature of the infraction; the defendant's recognition of the wrongful nature of his conduct; the likelihood, because of

defendant's professional occupation, that future violations might occur; and the sincerity of his assurances against future violations." *Id.* In its turn, the *Murphy* court relied upon an antitrust case, *United States v. W. T. Grant Co.*, 345 U.S. 629 (1953). There the Supreme Court said:

> The purpose of an injunction is to prevent future violations and, of course, it can be utilized even without a showing of past wrongs. But the moving party must satisfy the court that relief is needed. The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive. The chancellor's decision is based on all the circumstances; his discretion is necessarily broad and a strong showing of abuse must be made to reverse it. To be considered are the bona fides of the expressed intent to comply, the effectiveness of the discontinuance and, in some cases, the character of the past violations.

*Id.* at 633 (internal citation omitted).

The standard the district court used is generally applicable where an injunction is entered to prevent future violations. It was appropriately used here. And its reach is broad, emphasizing all the circumstances and taking into consideration multiple factors not directly related to the violations themselves. *See Gleason*, 432 F.3d at 683 (noting defendant's "flagrantly false" statements about his education and experience supported the district court's finding, in issuing a permanent injunction under § 7408, that defendant made false statements about tax liability). As Appellees point out, "The court had to consider not only appellants' tax-related misconduct, but also Ogbazion's credibility and the nature of the ITS business model to determine the likelihood of recurrence of that misconduct." The district court did not abuse its discretion by considering all of Appellants' wrongful behavior, including "fraudulent and misleading commercial practices" and violations of other statutes, to determine whether Appellants were likely to violate the federal tax laws again if the requested injunction was not entered.

## VI.    Application of § 6695 against Tax Tree

Appellants make several arguments that the district court erred in finding that Tax Tree violated 26 U.S.C. § 6695(f), "which, in turn, was held to be a violation of § 7402 and a basis for the permanent injunction." We agree with Appellants that the statute does not apply to Tax Tree because Tax Tree is not a tax return preparer. We therefore do not address Appellants' other arguments about § 6695(f).

Section 6695(f) of the tax code provides:

> Any person who is a tax return preparer who endorses or otherwise negotiates (directly or through an agent) any check made in respect of the taxes imposed by this title which is issued to a taxpayer (other than the tax return preparer) shall pay a penalty of $500 with respect to each such check. The preceding sentence shall not apply with respect to the deposit by a bank (within the meaning of section 581) of the full amount of the check in the taxpayer's account in such bank for the benefit of the taxpayer.

26 U.S.C. § 6695(f). The tax code defines a "tax return preparer" as "any person who prepares for compensation, or who employs one or more persons to prepare for compensation, any return of tax imposed by this title or any claim for refund of tax imposed by this title." 26 U.S.C. § 7701(a)(36)(A). The Code further provides that a person is not a tax return preparer "merely because such person—(i) furnishes typing, reproducing, or other mechanical assistance." 26 U.S.C. § 7701(a)(36)(B).

Appellants maintain that Tax Tree is a loan processor and refund transfer processor and does not get involved with tax returns until after they are filed. Our review of the record reveals nothing that contradicts this. The district court, in making its finding that Tax Tree violated § 6695(f), referred to Tax Tree as a "non-bank payment processor." An entity that merely processes return payments is not a tax return preparer.

Even the Government does not argue that Tax Tree is a tax preparer, instead arguing that "it is not relevant that Tax Tree is not a tax-return preparer because it agreed under the stipulated preliminary injunction not to violate I.R.C. § 6695(f) or to assist franchisees (who are preparers) in doing so." Tax Tree did agree, along with the other Appellants, to be enjoined from violating § 6695(f). But it is not clear how Tax Tree could violate § 6695(f) since it was not a tax preparer. Nor is it clear, and the Government does not explain, why violating a stipulated preliminary injunction, without more, justifies the issuance of a permanent injunction under § 7402(a).

On the other hand, it is not clear that violation of § 6695(f) was the only basis for the district court's injunction against Tax Tree. The district court generally referred to "Defendants" collectively in its findings, making it difficult to ascertain what specifically justifies the injunction against Tax Tree. The parties have not addressed this, and we decline to guess at what the district court intended. We reverse the district court's finding that Tax Tree violated § 6695(f), and remand for the district court to determine whether there is any other basis on which to apply the injunction to Tax Tree.

## VII. Failure to Obtain a Lending License under Indiana Law

Finally, Appellants argue that the following finding was clearly erroneous: "Defendants violated the Preliminary Injunction Order during the 2013 tax filing season by offering a [refund-anticipation-loan] product through GTP Financial in the State of Indiana without GTP Financial obtaining a state lending license, despite receiving explicit instructions from an Indiana government official that GTP Financial was required to obtain such a license in order to offer the RAL in that state." Decision, 2013 WL 5947222, at *104. The district court relied on this finding to conclude that Appellants would be "unable or unwilling to comply with the requirements of any permanent injunction order that does not shut down ITS Financial and Tax Tree." *Id.*

Appellants argue that "[t]here was nothing in the record indicating that the Indiana law had actually been violated, and it is improper to hold Defendants responsible for conduct of third parties beyond their control." We find that any error in the district court's finding was harmless because it was not the only or even the primary basis for its conclusion that an injunction shutting down Appellants was necessary and appropriate.

In a section of its legal conclusions that preceded the Indiana-lender-licensing-law finding, the court assessed the totality of the circumstances and concluded that a conduct-specific injunction would not suffice to prevent repeat violations. The court then stated, "Defendants' violations of the preliminary injunction are *further* evidence that, absent an order putting Defendants out of the tax business, Defendants' illicit behavior is likely to recur." Decision, 2013 WL 5947222, at *96 (emphasis added). The court went on to find that Appellants violated the Equal Credit Opportunity Act and the Truth in Lending Act, in violation of the preliminary injunction, as well as the Indiana-lender-licensing laws. In short, the district court's finding that Appellants violated the Indiana-lender-licensing laws was not essential to its decision to grant the injunction, and therefore was not an abuse of discretion. *See S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 333 (6th Cir. 2013) (where claimed error was not determinative in granting injunction, it could not be abuse of discretion).

## VIII. Conclusion

We conclude the district court had authority under § 7402(a) to enjoin Appellants. The decision to award the injunction is affirmed except we reverse the district court's finding that Tax Tree violated § 6695(f), and remand for the district court to determine whether there is any other basis on which to apply the injunction to Tax Tree.